John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

*Counsel for Plaintiff Donald Ramsey and the Proposed Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD RAMSEY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, JENNIFER N. JONES, SUROJIT CHATTERJEE, PAUL GREWAL, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL MANAGEMENT LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD.<br><br>        Defendants. | Case No. 3:21-cv-05634-VC<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff Donald Ramsey ("Plaintiff") makes the following allegations, individually and on behalf of all other similarly situated, by and through Plaintiff's counsel, upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included, among other things, review and analysis of: (i) regulatory filings made by Coinbase Global, Inc. ("Coinbase" or the "Company") with the SEC; (ii) press releases and media reports issued by and disseminated by the Company; and (iii) analyst reports, media reports, and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## INTRODUCTION

1.      This is a securities class action on behalf of all persons and entities that purchased or otherwise acquired Coinbase Class A common stock pursuant and/or traceable to the Company's registration statement and prospectus (collectively, the "Offering Materials") for the resale of up to 114,850,769 shares of its Class A common stock, whereby Coinbase began trading as a public company on or around April 14, 2021 (the "Offering").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2.      Coinbase "powers the cryptoeconomy," offering a "trusted platform" for sending and receiving Bitcoin and other digital assets built using blockchain technology to approximately 43 million retail users, 7,000 institutions, and 115,000 ecosystem partners in over 100 countries. For retail users, Coinbase functions as the primary "financial account for the cryptoeconomy – a **safe, trusted, and easy-to-use platform** to invest, store, spend, earn, and use crypto assets."  For institutions, Coinbase offers "hedge funds, money managers, and corporations, a one-stop shop for accessing crypto markets through advanced trading and custody technology, built on top of a **robust security infrastructure**[,]" and "a state of the art marketplace with a deep pool of liquidity transacting in crypto assets."  And, for ecosystem partners, including developers, merchants and asset issuers, "a platform with technology and services that enables them to build applications that

leverage crypto protocols, actively participate in crypto networks, and securely accept cryptocurrencies as payments." According to Coinbase, however, it is its "trusted and easy-to-use products" and "robust backend technology platform to support the global, **real-time, and 24/7/365 demands** of crypto asset markets," (*i.e.*, its "unique approach") that "draws users, institutions, and ecosystem partners to [its] platform." [Emphasis added.]

3.    On April 14, 2021, Coinbase filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. The Company registered for the resale of up to 114,850,769 shares of its Class A common stock by registered shareholders. According to the Registration Statement, the resale of the Company's stock was not underwritten by any investment bank and the registered stockholders would purportedly elect whether or not to sell their shares. Such sales, if any, would be brokerage transactions on the Nasdaq Global Select Market (the "NASDAQ"), and Coinbase would purportedly not receive any proceeds from the sale of shares of Class A common stock by the registered stockholders. Thus, Coinbase's operations, including its liquidity and capital resources, would continue to be financed with cash flow from operating activities and net proceeds from the sale of convertible preferred stock. As of December 31, 2020, Coinbase had cash and cash equivalents of $1.1 billion, exclusive of restricted cash and customer custodial funds.

4.    Only a month later, the high-flying promise of Coinbase came to a screaming halt, as Coinbase conceded the need to raise capital and revealed performance issues that prevented users' ability to trade cryptocurrencies. On May 17, 2021, Coinbase announced its plans to raise about $1.25 billion via a convertible bond sale (the "Bond Offering"). Then, on May 19, 2021, Coinbase revealed technical problems, including "delays . . . due to network congestion" effecting those who want to get their money out.

5.    On this news, the Company's share price fell $23.44 per share, nearly 10% over two consecutive trading sessions, to close at $224.80 per share on May 19, 2021, thereby injuring investors.

6.     By the commencement of this action, Coinbase stock traded as low as $208.00 per share, a significant decline from its April 14, 2021 opening price of $381.00 per share.

7.     The Offering Materials were false and misleading and omitted to state that, ***at the time of the Offering***: (1) the Company required a sizeable cash injection; (2) the Company's platform was susceptible to service-level disruptions, which were increasingly likely to occur as the Company scaled its services to a larger user base; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2), and 77o, respectively).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 22 of the Securities Act (15 U.S.C. §77v).

11.    Venue is proper in this Judicial District pursuant to 28 U.S. §1391.

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

**A.     Plaintiff**

13.    Donald Ramsey, as set forth in his accompanying certification, incorporated by reference herein, purchased or otherwise acquired Coinbase common stock pursuant and/or traceable to the Offering Materials issued in connection with the Company's Offering, and suffered

1   damages as a result of the federal securities law violations and false and/or misleading statements

2   and/or material omissions alleged herein.

3   **B.   Defendants**

4   **1.   The Company**

5   14.   Defendant Coinbase is a "remote-first," cryptocurrency exchange, meaning that for

6   the vast majority of roles, its employees have the option to work remotely, so it does not currently

7   have a principal executive office.  Coinbase is incorporated under the laws of Delaware and its

8   common stock is listed on the NASDAQ under the ticker symbol "COIN."  Pursuant to the

9   Securities Act, as an issuer and control person, Coinbase is strictly liable for the materially untrue

10   and misleading statements incorporated into the Offering Materials.

11   **2.   The Individual Defendants**

12   15.   Defendant Brian Armstrong ("Armstrong") is, and was at the time of the Offering,

13   the Company's Chief Executive Officer and Chairman of the Board of Directors (the "Board").

14   Armstrong co-founded Coinbase and is a central figure in the Company, participating in the

15   review, approval, and making of the statements in the Offering Materials, including signing the

16   Offering Materials.  Additionally, Armstrong participated in the preparation and dissemination of

17   the Offering's investor day and investor education meetings presentation, talking points and script.

18   He also participated in making false and misleading statements during the investor day

19   presentation.  Armstrong was financially motivated to take the Company public.

20   16.   Defendant Alesia J. Haas ("Haas") is, and was at the time of the Offering, the

21   Company's Chief Financial Officer.  Haas is and was responsible for Coinbase's financial

22   management strategy, which includes overseeing global operations, finance, accounting, corporate

23   strategy, treasury, tax, investor relations, business analytics, and IT.  She is a central figure in the

24   Company, participating in the review, approval, and making of the statements in the Offering

25   Materials, including signing the Offering Materials.  Additionally, Haas participated in the

26   preparation and dissemination of the Offering's investor day and investor education meeting

27   presentations, talking points and script.  She also participated in making false and misleading

28

statements during the investor day presentation. Haas was financially motivated to take the Company public.

17. Defendant Jennifer N. Jones ("Jones") served as the Company's Chief Accounting Officer at the time of the Offering. Jones was a central figure in the Company, participating in the review, approval, and making of the statements in the Offering Materials and signing the Offering Materials. Jones was financially motivated to take the Company public.

18. Defendant Surojit Chatterjee ("Chatterjee") is, and was at the time of the Offering, the Company's Chief Product Officer. Chatterjee was identified as a Principal and Registered Stockholder whose beneficially owned capital stock was registered for resale in connection with the Offering. Chatterjee was thus financially motivated to take the Company public.

19. Defendant Paul Grewal ("Grewal") is, and was at the time of the Offering, the Company's Chief Legal Officer. Grewal was identified as a Principal and Registered Stockholder whose beneficially owned capital stock was registered for resale in connection with the Offering. Grewal was thus financially motivated to take the Company public.

20. Defendant Marc L. Andreessen ("Andreessen") is, and was at all relevant times, a director of the Company. Andreessen also serves as a general partner of Defendant AH Capital, a venture capital firm located in Silicon Valley, California, which beneficially owned more than 5% of Coinbase's outstanding capital stock. Andreessen signed or authorized the signing of the Company's Offering Materials. Andreessen was financially motivated to take the Company public.

21. Defendant Frederick Ernest Ehrsam III ("Ehrsam") is, and was at all relevant times, a director of the Company. Ehrsam also serves as a managing member of Defendant Paradigm Fund GP LLC. Ehrsam signed or authorized the signing of the Company's Offering Materials. Ehrsam was financially motivated to take the Company public.

22. Defendant Kathryn Haun ("Haun") is, and was at all relevant times, a director of the Company. Haun also serves as a general partner of Defendant AH Capital, a venture capital firm located in Silicon Valley, California, which beneficially owned more than 5% of Coinbase's

outstanding capital stock.  Haun signed or authorized the signing of the Company's Offering Materials.  Haun was financially motivated to take the Company public.

23.     Defendant Kelly Kramer ("Kramer") is, and was at all relevant times, a director of the Company.  Kramer signed or authorized the signing of the Company's Offering Materials. Kramer was financially motivated to take the Company public.

24.     Defendant Gokul Rajaram ("Rajaram") is, and was at all relevant times, a director of the Company.  Rajaram signed or authorized the signing of the Company's Offering Materials. Rajaram was financially motivated to take the Company public.

25.     Defendant Fred Wilson ("Wilson") is, and was at all relevant times, a director of the Company.  Wilson also founded and is a partner at Defendant Union Square Ventures, an investment firm that beneficially owned more than 5% of Coinbase's outstanding capital stock at the time of the Offering.  Wilson signed or authorized the signing of the Company's Offering Materials.  Wilson was financially motivated to take the Company public.

26.     Defendants Armstrong, Haas, Jones, Andreessen, Ehrsam, Haun, Kramer, Rajaram, and Wilson are collectively referred to herein as the "Individual Defendants."  The Individual Defendants ran the Company as hands-on executives, manager and/or directors, overseeing Coinbase's operations, finances, and business.  The Individual Defendants made the materially false and misleading statements described herein and each had intimate knowledge about core aspects of Coinbase's financial and business operations.  The Individual Defendants were also intimately involved in deciding which disclosures would be made by Coinbase.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants, because of their positions at Coinbase, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, presentations to securities analysts, money and portfolio managers, institutional and individual investors, and industry experts and/or practitioners at conferences and

1   other events.  The Individual Defendants were provided with copies of the Company's reports and

2   press releases alleged herein to be misleading prior to or shortly after their issuance and had the

3   ability and opportunity to prevent their issuance or cause them to be corrected.

4   　　　　　　　　　**3.　　　The Venture Capital Defendants**

5   　　　　　　27.　　Defendant AH Capital Management LLC, formerly Andreessen Horowitz (herein,

6   "AH Capital"), is a venture capital firm located in Silicon Valley, California.  AH Capital and its

7   affiliates are part of the largest venture capital stake in the Company, beneficially owning more

8   than 5% of Coinbase's outstanding capital stock at the time of the Offering.  AH Capital was

9   financially motivated to take the Company public.

10   　　　　　　28.　　Defendant Paradigm Fund LP ("Paradigm") is a San Francisco, California-located

11   investment firm focused on supporting crypto companies, protocols, and currencies.  Paradigm

12   and its affiliates are part of the largest venture capital stake in the Company, beneficially owning

13   more than 5% of Coinbase's outstanding capital stock at the time of the Offering. Paradigm was

14   financially motivated to take the Company public.

15   　　　　　　29.　　Defendant Ribbit Management Company, LLC ("Ribbit Capital") is a Palo Alto,

16   California-based venture capital firm.  Ribbit Capital and its affiliates are part of the largest venture

17   capital stake in the Company, beneficially owning more than 5% of Coinbase's outstanding capital

18   stock at the time of the Offering.  Ribbit Capital was financially motivated to take the Company

19   public.

20   　　　　　　30.　　Defendant Tiger Global Management, LLC and its affiliate, Tiger Global Private

21   Investment Partners XI, L.P. (collectively, "Tiger Global"), is a New York, New York-based

22   investment firm.  Tiger Global is part of the largest venture capital stake in the Company,

23   beneficially owning more than 5% of Coinbase's outstanding capital stock at the time of the

24   Offering.  Tiger Global was financially motivated to take the Company public.

25   　　　　　　31.　　Defendant Union Square Ventures, LLC and its affiliates (collectively, "Union

26   Square Ventures") is a New York, New York-based venture capital firm.  Union Square Ventures

27   is part of the largest venture capital stake in the Company, beneficially owning more than 5% of

28

1  Coinbase's outstanding capital stock at the time of the Offering. Union Square Ventures was

2  financially motivated to take the Company public.

3          32.     Defendant Viserion Investment Pte Ltd. ("Viserion") is a private limited company

4  incorporated in Singapore.  Viserion is part of the largest venture capital stake in the Company,

5  beneficially owning more than 5% of Coinbase's outstanding capital stock at the time of the

6  Offering. Viserion was financially motivated to take the Company public.

7          33.     Defendants in ¶¶27-33 are collectively referred to herein as the "Venture Capital

8  Defendants."

9                              **SUBSTANTIVE ALLEGATIONS**

10     **A.     Company Background**

11         34.     Coinbase is the largest cryptocurrency exchange in the United States.

12         35.     Starting in 2012, Coinbase sought to allow anyone, anywhere, the ability to easily

13  and securely send and receive Bitcoin, the first crypto asset.  Since then, Coinbase has expanded

14  its offering and capabilities to enable customers around the world to invest in, and use, a multitude

15  of crypto assets.  As of the Company's Offering, the Coinbase platform was used by approximately

16  43 million retail users, 7,000 institutions, and 115,000 ecosystem partners in over 100 countries,

17  to participate in the cryptoeconomy.

18         36.     For the overwhelming majority of its 43 million retail users, Coinbase functions as

19  the primary "financial account for the cryptoeconomy – a *safe, trusted, and easy-to-use platform*

20  to invest, store, spend, earn, and use crypto assets."  Not surprisingly, Coinbase generates nearly

21  all of its revenue largely from transaction fees earned from these individuals.  In fact, for the year

22  ended December 31, 2020, transaction revenue represented over 96% of Coinbase's net revenue,

23  which, since inception through December 31, 2020, equaled $3.4 billion.   [Emphasis added.]

24         37.     For institutions, Coinbase offers "hedge funds, money managers, and corporations,

25  a one-stop shop for accessing crypto markets through advanced trading and custody technology,

26  built on top of a *robust security infrastructure*[,]" and "a state of the art marketplace with a deep

27  pool of liquidity transacting in crypto assets."   Likewise, for ecosystem partners, including

28

developers, merchants and asset issuers, Coinbase offers "a platform with technology and services that enables them to build applications that leverage crypto protocols, actively participate in crypto networks, and securely accept cryptocurrencies as payments." [Emphasis added.]

38.     According to Coinbase, however, it is its "trusted and easy-to-use products" and "robust backend technology platform" that "draws users, institutions, and ecosystem partners to [its] platform." Indeed, what "sets [Coinbase] apart" from competitors is its "custom technology platform[,] [which is] **built to deal with the real-time, global, and 24/7/365 nature of the crypto asset markets**." [Emphasis added.]

**B.     Coinbase's Direct Offering**

39.     On March 23, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on April 1, 2021.

40.     On April 14, 2021, Coinbase filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. The Company registered for the resale of up to 114,850,769 shares of its Class A common stock by registered shareholders. According to the Registration Statement, the resale of the Company's stock was not underwritten by any investment bank and the registered stockholders would purportedly elect whether or not to sell their shares. Such sales, if any, would be brokerage transactions on the NASDAQ, and Coinbase would purportedly not receive any proceeds from the sale of shares of Class A common stock by the registered stockholders. Rather, Coinbase's operations, including its liquidity and capital resources, would continue to be financed with cash flow from operating activities and net proceeds from the sale of convertible preferred stock. As of December 31, 2020, Coinbase had cash and cash equivalents of $1.1 billion, exclusive of restricted cash and customer custodial funds.

41.     On April 14, 2021, Coinbase shares began trading on the NASDAQ at $381.00 per share.

1     **C.**    **Coinbase's False and/or Misleading Offering Materials**

2     42.    The Offering Materials were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

43.    Under applicable SEC rules and regulations, the Offering Materials were required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

44.    The Offering Materials touted the advantages and power of the Company's platform, stating in relevant part:

> We have developed a complementary suite of products and services that are designed ***to meet the distinct needs*** of our customers as they transact in the cryptoeconomy. Our customers – retail users, institutions, and ecosystem partners – come together on our platform to create a powerful flywheel for our business.

> Our platform and flywheel are ***powered by a robust backend technology system*** that enables us to develop, launch, and market scalable new products and services. Our technology platform includes the following elements:

> - ***15+ native blockchain integrations and counting.*** We have developed custom technology and processes to directly integrate with over 15 blockchain protocols and efficiently support new protocols.

> - ***Advanced cybersecurity and cryptography technology.*** We have pioneered industry-leading standards for managing private cryptographic keys and use sophisticated cybersecurity technologies such as multi-party computation to safeguard a wide range of crypto assets.

> - ***Proprietary crypto compliance infrastructure.*** We have built bespoke transaction monitoring systems to analyze crypto asset transactions ***in real-time*** on the blockchain, allowing us to support new products and services.

> - ***Powerful product experiences. Investments in our technology platform give us the ability to create unique product experiences for our customers that allow them to easily participate*** in technically complex parts of the cryptoeconomy.

[Emphasis added.]

45.     The Offering Materials also tout the platform when highlight "what sets [Coinbase] apart," stating in relevant part:

- ***We are a market leading brand exclusively focused on the cryptoeconomy.*** Keeping pace with the breadth and depth of innovation in the cryptoeconomy requires focus. We have and remain solely focused on building technology to power the cryptoeconomy since 2012. Our focus ***allows us to nimbly adapt to quickly shifting trends and support*** the growth of the industry. As the cryptoeconomy grows, our competitive advantage grows.

- ***We have a trusted platform owing to our heritage of security and culture of regulatory compliance.*** We are a financial technology provider that offers services to customers in over 100 countries, and we are proud to be one of the longest running crypto platforms where customers have not lost funds due to a security breach of the platform. We are also licensed to engage in money transmission and virtual currency business in almost all U.S. states an we continue to pursue licensing in select jurisdictions internationally.

- ***We are the default starting place for new user journeys into the cryptoeconomy.*** By reducing the complexity of crypto and emphasizing intuitive product design, we have become a primary on-ramp for customers' journeys into the cryptoeconomy.

- ***We have significant scale, securely storing over $90 billion in total assets.*** We believe our market leading share of assets on our platform is a competitive advantage, and that we have a substantial opportunity to build on our customer relationships by growing with our customers and offering a broader suite of products and services.

- ***We have a robust technology platform that enables unique product experiences for our industry.*** Our custom technology platform ***is built to deal with the real-time, global and 24/7/365 nature of crypto asset markets***, enabling us to rapidly research, develop, and launch new products and features.

- ***We operate a marketplace with one of the deepest pools of liquidity and a network effect.*** We have a deep pool of liquidity for exchanging a wide range of crypto assets, supported by a healthy mix of retail and institutional activity.

[Emphasis added.]

46.     The Offering Materials also emphasized the strength of Coinbase's liquidity and capital resources, as well as its long history of quickly growing in a "capital-efficient manner," stating in relevant part:

> **We have grown quickly and in a capital-efficient manner** since our founding. For the years ended December 31, 2020 and December 31, 2019, we generated total revenue of $1.3 billion and $533.7 million, respectively, net income (loss) of $322.3 million and $(30.4) million, respectively, and Adjusted EBITDA of $527.4 million and $24.3 million, respectively.
>
> *     *     *
>
> Since our inception, we have financed our operations primarily with cash flow from operating activities and net proceeds from the sale of convertible preferred stock. As of December 31, 2020, we had cash and cash equivalents of $1.1 billion, exclusive of restricted cash and customer custodial funds.
>
> *     *     *
>
> Our cash flow from operating activities may materially fluctuate from period-to-period based on movement within our custodial funds due to customers liability. Since our customer custodial funds are included in cash and cash equivalents, any large fluctuations in the related liability will directly impact our cash flow from operating activities. We believe **our existing cash and cash equivalents will be sufficient to meet our working capital and capital expenditure needs for at least the next 12 months**.
>
> Our future capital requirements will depend on many factors, including market acceptance of crypto assets and blockchain technology, our growth, our ability to attract and retain customers on our platform, the continuing market acceptance of products and services, the introduction of new subscription products and services on our platform, expansion of sales and marketing activities, and overall economic conditions. To the extent that current and anticipated future sources of liquidity are insufficient to fund our future business activities and requirements, we **may** be required to seek additional equity or debt financing.

[Emphasis added.]

47.     The Offering Materials were false and misleading and omitted to state that, **at the time of the Offering**: (1) the Company required a sizeable cash injection; (2) the Company's platform was susceptible to service-level disruptions, which were increasingly likely to occur as the Company scaled its services to a larger user base; and (3) as a result of the foregoing,

1    Defendants' positive statements about the Company's business, operations, and prospects, were

2    materially misleading and/or lacked a reasonable basis.

3        48.    Defendants were required to disclose this material information in the Offering

4    Materials, for at least three independent reasons.  First, SEC Regulation S-K, 17 C.F.R. §229.303

5    (Item 303), required disclosure of any known events or uncertainties that at the time of the Offering

6    had caused, or were reasonably likely to cause, Coinbase's disclosed financial information not to

7    be indicative of future operating results.  At the time of the Offering, Coinbase knew of, or in the

8    exercise of reasonable care should have known, that it had insufficient cash and, further, that the

9    continued growth the Coinbase platform exposed it to service-level technical issues that disrupted

10   user's ability to sell or buy cryptocurrencies during particularly volatile times and, as a result, the

11   Company's ability to generate revenue through transaction fees.  These undisclosed, materially

12   negative events and trends were likely to (and in fact did) materially and adversely affect

13   Coinbase's financial state and rendered the disclosed results and trends in the Offering Materials

14   misleading and not indicative of the Company's future operating results.

15       49.    Second, SEC Regulation S-K, 17 C.F.R. §229.105 (Item 105), required, in the

16   "Risk Factor" section of the Offering Materials, a discussion of the most significant factors that

17   make the offering risky or speculative, and that each risk factor adequately describe the risk.

18   Coinbase's discussion of risk factors did not adequately describe the risk posed by service-level

19   technical disruptions impacting users' ability to buy and sell cryptocurrencies and the foreseeable

20   negative impact such technical issues were already having (or would have) on Coinbase's business,

21   nor the other already occurring negative results and trends, nor the likely and consequent materially

22   adverse effects on the Company's future results, share price, and prospects.

23       50.    Third, Defendants' failure to disclose Coinbase's need for cash and its service-level

24   disruptions rendered false and misleading the Offering Material's many references to known risks

25   that, "if" occurring "might" or "could" affect the Company.  As the Company eventually revealed,

26   these "risks" had already materialized at the time of the Offering.

27

28

51. Nonetheless, Defendants went forward with the Offering, with the foregoing misrepresentations and omissions in the Offering Materials. Through the Offering, Defendants made available for resale up to 114,850,769 shares of Coinbase's Class A common stock, all pursuant to the Offering Materials.

**D.** **Events and Disclosures Following the Offering**

52. The high-flying promise of Coinbase came to a screeching halt only a month after the Offering.

53. On May 17, 2021, Coinbase fully undermined its repeated representations in the Offering Materials that the Company's existing cash and cash equivalents were sufficient, by announcing plans to raise about $1.25 billion via a convertible bond sale (the "Bond Offering"). *Forbes.com* was quick to note the conflict between the Offering Materials and Coinbase's Bond Offering in its article entitled "Why is Coinbase Stock Trending Lower," stating in relevant part:

> On Monday evening, Coinbase said that it plans to raise about $1.3 billion via a convertible bond sale, a move that could be dilutive to existing shareholders. ***Investors were also likely surprised by the timing of the issue, considering that Coinbase just went public in mid-April via a direct listing (which doesn't involve issuing new shares or raising capital), signaling that it didn't require cash.*** So the company's decision to issue bonds a little over a month later is likely raising some questions.

[Emphasis added.]

54. On this news, Coinbase's stock declined more than 3.7%, falling from $248.24 per share on May 17, 2021 to close at $239.00 per share on May 18, 2021.

55. Then, shortly after the market opened on May 19, 2021, as the value of cryptocurrencies radically plummeted, Coinbase revealed technical problems experienced by users on its platform, including "delays…due to network congestion" effecting "those who want to get their money out." Such service-level technical problems are disastrous for a Company which bills itself as "the easiest place to buy and sell crypto," and which relies on transaction fees to generate nearly all of its revenues.

56.     On this news, Coinbase's stock declined nearly 6%, falling from $239.00 per share on May 18, 2021 to close at $224.80 per share on May 19, 2021.

57.     By the commencement of this action, Coinbase stock traded as low as $208.00 per share, a significant decline from the Company's April 14, 2021 opening price of $381.00 per share.[1]



## **CLASS ACTION ALLEGATIONS**

58.     Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3), of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Coinbase common stock pursuant and/or traceable to the Offering Materials (the "Class").   Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Coinbase, members of the Coinbase Board, and members of their immediate families (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of Coinbase.

59.     The members of the Class are so numerous that joinder of all members is impracticable.  Following the Offering, Coinbase's shares were actively traded on the NASDAQ, a national securities exchange.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the Class.   Record owners and other members of the

---

[1]     The table above reflects closing prices.  Coinbase opened at $381.00 per share on April 14, 2021 before closing that same day at $328.28.

Class may be identified from records maintained by Coinbase or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

60.    Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendants' wrongful conduct in violation of the federal securities laws.  Further, Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class and securities litigation.

61.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the members of the Class are:

(a) Whether Defendants' acts violated the federal securities laws as alleged herein;

(b) Whether the Offering Materials omitted and/or misrepresented material facts about the business, operations, and prospects of Coinbase; and

(c) To what extent the members of the Class have sustained damages and the proper measure of damages.

62.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Further, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for Class members to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Count I**

**For Violations of §11 of the Securities Act**
**(Against Defendant Coinbase and the Individual Defendants)**

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     This count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of Plaintiff and other members of the Class, against the Company and the individual Defendants.    This is a non-fraud cause of action.    Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

65.     The Offering Materials were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

66.     Coinbase is the issuer of the securities purchased by Plaintiff and other members of the Class.    As such, the Company is strictly liable for the materially untrue statements contained in the Offering Materials and the failure of the Offering Materials to be complete and accurate.

67.     The Individual Defendants each signed the Offering Materials.    As such, each is strictly liable for the materially inaccurate statements contained therein and the failure of the Offering Materials to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.    The Individual Defendants named herein were responsible for the contents and dissemination of the Offering Materials, which were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.    The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Materials and ensure that they were true and accurate and not misleading.    In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions

17

contained in the Offering Materials.  Accordingly, the Individual Defendants are liable to Plaintiff and the other members of the Class.

68.    By reason of the conduct alleged herein, each of the Company and the Individual Defendants violated, and/or controlled a person who violated, §11 of the Securities Act.

69.    Plaintiff and the other members of the Class acquired Coinbase common stock pursuant or traceable to the Offering Materials and without knowledge of the untruths and/or omissions alleged herein.  Plaintiff and the other members of the Class sustained damages, and the price of the Company's shares declined substantially due to material misstatements in the Offering Materials.

70.    This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

71.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

## Count II

### For Violations of §12(a)(2) of the Securities Act
### (Against Defendant Coinbase and the Individual Defendants)

72.    Plaintiff repeats and re-alleges each and every allegation contained above, as if fully set forth herein.

73.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against each of the Company and the Individual Defendants.

74.    This Count does not sound in fraud.  The Company and the Individual Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's Class A common stock offered pursuant to the Offering.  The Offering Materials were used to induce investors, such as Plaintiff and the other members of the Class, to purchase the Company's shares in the Offering.

75.    The Offering Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to

state material facts required to be stated therein.  The Company's and the Individual Defendants' acts of solicitation included participating in the preparation of the false and misleading Offering Materials.

76.     The Company and the Individual Defendants owed Plaintiff, and the other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Neither the Company nor the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Materials were accurate and complete in material respects.  Had they done so, the Company and the Individual Defendants would have known of the material misstatements and omissions alleged herein.

77.     Plaintiff and the other Class members did not know, nor in the exercise of reasonable diligence could have known, of the material untruths and omissions contained in the Offering Materials.

78.     By reasons of the conduct alleged herein, the Company and the Individual Defendants violated §12(a)(2) of the Securities Act.

79.     As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Coinbase common stock pursuant to the Offering Materials sustained substantial damages in connection with their purchases of stock. Accordingly, Plaintiff and the other members of the Class who hold Coinbase stock issued pursuant to the Offering Materials have the right to rescind and recover the consideration paid for their shares, and hereby tender their Coinbase shares to Defendants sued herein.  Class members who have sold their Coinbase stock seek damages to the extent permitted by law.

80.     This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

1

2

3

**Count III**

**For Violations of §15 of the Securities Act**
**(Against the Individual Defendants and the Venture Capital Defendants)**

4       81.     Plaintiff repeats and realleges each and every allegation contained above as if fully

5   set forth herein.

6       82.     This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on

7   behalf of Plaintiff and the other members of the Class, against each of the Individual Defendants

8   and the Venture Capital Defendants.

9       83.     This Count does not sound in fraud.   Plaintiff does not allege that any of the

10   Individual Defendants and the Venture Capital Defendants committed intentional or reckless

11   misconduct or that any of the Individual Defendants and the Venture Capital Defendants acted

12   with scienter of fraudulent intent, which are not elements of a §15 claim.

13       84.     The Individual Defendants were controlling persons of the Company within the

14   meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management

15   positions at, and/or directorships held at the Company, as alleged above, the Individual Defendants

16   invested in, individually and collectively, had the power to influence, and did in fact exercise

17   control over the Company to cause it to engage in the conduct complained of herein.  Similarly,

18   each of the other Individual Defendants not only controlled those subject to liability as primary

19   violators of §11 of the Securities Act, as alleged above, they directly participated in controlling

20   Coinbase by having signed, or authorized the signing of, the Registration Statement and

21   authorizing the resale of Coinbase securities to Plaintiff and members of the Class.

22       85.     Likewise, the Venture Capital Defendants each had the ability to influence the

23   policies and management of the Company at all relevant times by their control over the Company

24   through Class B super voting common stock, pre-Offering agreements, and through their

25   designated directors on the Board.  The Venture Capital Defendants also had a financial interest

26   in taking the Company public and were critical to effectuating the Offering.

27

28

86.     As control persons of Coinbase, each of the Individual Defendants and the Venture Capital Defendants are jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as Coinbase for its violations of §11 of the Securities Act.

87.     As a direct and proximate result of said wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchase or acquisition of Coinbase common stock.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of each member of the Class, prays for relief and judgement as follows:

A.     Declaring that this action is a proper class action, pursuant to Fed. R. Civ. P. 23, certifying Plaintiff as the Class representative;

B.     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained, as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and each member of the Class, recission, disgorgement, and all other remedies in equity or in law pursuant to the Securities Act;

D.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgement interest, as well as their reasonable attorneys' fees with interest, expert fees, and other costs; and

E.     Awarding such other and further relief as the Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands trial by jury of all issues that may be so tried.

DATED:  July 22, 2021                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                         *s/ John T. Jasnoch*
                                         John T. Jasnoch (CA 281605)
                                         600 W. Broadway, Suite 3300

San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV
(*pro hac vice* forthcoming)
Jonathan M. Zimmerman
(*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
Facsimile:  212-233-6334
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com

**THE SCHALL LAW FIRM**
Brian J. Schall (CA 290685)
1880 Century Park E, Suite 404
Los Angeles, CA 90067-1604
Telephone: (310) 301-3335
Facsimile: (310) 388-0192
brian@schallfirm.com

*Counsel for Plaintiff Donald Ramsey and the Proposed Class*