Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Proposed Lead Counsel and Counsel*
*for Movant, Charles Bethune, III*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| DONALD RAMSEY, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, JENNIFER N. JONES, SUROJIT CHATTERJEE, PAUL GREWAL, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL MANAGEMENT LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD.,<br><br>　　　　　　　　　Defendants. | Case No. 3:21-CV-05634-VC<br><br>**CHARLES BETHUNE III'S MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFF, AND APPROVE HIS SELECTION OF LEAD COUNSEL**<br><br>**CLASS ACTION**<br><br>Judge:　　Hon. Vince Chhabria<br>Date:　　　October 28, 2021<br>Time:　　　2:00 p.m.<br>Courtroom: 4 - 17th Floor |

| | |
|---|---|
| GABBY KLEIN, Individually and On Behalf of All Others Similarly Situated, | Case No. 4:21-CV-06049-YGR |
| Plaintiff, | |
| v. | |
| COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, JENNIFER N. JONES, SUROJIT CHATTERJEE, PAUL GREWAL, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, and FRED WILSON, | |
| Defendants. | |
| MATTHEW CATTERLIN, Individually and On Behalf of All Others Similarly Situated, | Case No. 4:21-CV-06149-YGR |
| Plaintiff, | |
| v. | |
| COINBASE GLOBAL, INC., BRIAN ARMSTRONG, SUROJIT CHATTERJEE, PAUL GREWAL, ALESIA J. HAAS, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL, LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD., | |
| Defendants. | |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at 2:00 p.m. on October 28, 2021, or as soon thereafter as the matter may be heard, before the Honorable Vince Chhabria, United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Charles Bethune, III ("Mr. Bethune") will and hereby does move for an order: (i) consolidating the related actions; (ii) appointing him as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iii) approving his selection of Kahn Swick & Foti, LLC as Lead Counsel for the putative class. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the attached declaration and exhibits, the pleadings on file in this action, oral argument, and such other matters as the Court may consider in hearing this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the above-captioned related actions should be consolidated pursuant to FED. R. CIV. P. 42; *see* § IV.A, *infra*.

2. Whether Mr. Bethune should be appointed as Lead Plaintiff pursuant to the PSLRA. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002); § IV.B, *infra*.

3. Whether the Court should approve Mr. Bethune's selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel. *See generally In re Cohen*, 586 F.3d 703 (9th Cir. 2009); § IV.C, *infra*.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Mr. Bethune respectfully submits this memorandum of law in support of his motion to: (i) consolidate the related actions; (ii) appoint him as lead plaintiff in the above-referenced actions pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77o, respectively, as amended by the PSLRA, 15 U.S.C. § 77z-1(a)(3)(B)(i); and (iii) approve his selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the class. *See In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).

As described in the Certification and Loss Chart attached to the Declaration of Ramzi Abadou in

Support of Mr. Bethune's Motion for Appointment as Lead Plaintiff and Approval of His Selection of Lead Counsel ("Abadou Decl.") (Ex's. A & B), Mr. Bethune suffered out-of-pocket losses of approximately $260,000 from his purchases of Coinbase Global, Inc. ("Coinbase" or "the Company") securities between April 14, 2021 and July 22, 2021, inclusive ("Class Period"). To the best of his knowledge, this loss represents the largest financial interest of any investor seeking to be appointed lead plaintiff. In addition, Mr. Bethune's Certification and Declaration demonstrate his awareness of the fiduciary duties associated with serving as a lead plaintiff. *See id.*, Ex's. A & C. Mr. Bethune also satisfies the applicable typicality and adequacy requirements of Rule 23. Accordingly, Mr. Bethune seeks an order: (i) consolidating the related actions; (ii) appointing him as Lead Plaintiff in this action pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o, respectively); and (iii) approving his selection of KSF as Lead Counsel for the putative Class.

## II.   PROCEDURAL BACKGROUND

The first lawsuit against Defendants Coinbase, Brian Armstrong, Surojit Chatterjee, Paul Grewal, Alesia J. Haas, Marc L. Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, Fred Wilson, Ah Capital, LLC, Paradigm Fund LP, Ribbit Management Company, LLC, Tiger Global Management, LLC, Union Square Ventures, LLC, and Viserion Investment Pte Ltd., captioned *Ramsey v. Coinbase Global, Inc. et al.*, No. 3:21-CV-05634 (N.D. Cal.) was filed in this District on July 22, 2021 ("*Ramsey* Action"). Since that time, two more lawsuits were filed in this District: *Klein v. Coinbase Global, Inc.*, No. 4:21-cv-6049 filed on August 5, 2021 ("*Klein* Action"); and *Catterlin v. Coinbase Global, Inc.*, No. 4:21-cv-6149, filed on August 10, 2021 ("*Catterlin* Action") (collectively, "Related Actions").[1]

The Related Actions are brought pursuant to the Securities Act of 1933, on behalf of all persons and entities that purchased or otherwise acquired Coinbase Class A common stock pursuant to Coinbase's registration statements and prospectus, which provided for the sale of up to 114,850,769 shares of its Class A common stock in Coinbase's direct listing initial public offering ("IPO") on April 14, 2021. *See Ramsey*

---

[1] The abbreviation "Compl." refers to the complaint filed in each Action, as indicated. For the *Ramsey* Action, it refers to the corrected complaint filed at ECF No. 8.

Compl., ¶ 1; *Klein* Compl., ¶ 1; and *Catterlin* Compl., ¶ 5. As described in further detail below, the Related Actions each allege similar claims against similar defendants. *See* § IV.A, *infra*.

III. **STATEMENT OF FACTS**

Defendant Coinbase operates a cryptocurrency exchange—the largest in the United States. *Klein* Compl., ¶ 27. Beginning with Bitcoin, the first crypto asset, and later including other cryptocurrencies, the Company's platform had grown by the time of the April 14, 2021 IPO and by then had approximately 43 million retail users, 7,000 institutions, and 115,000 ecosystem partners in over 100 countries. *Id.* at ¶ 28. Coinbase, which touted its platform as "safe, trusted, and easy-to-use," generated virtually all its revenue through transaction fees. *Id.* at ¶ 29.

Coinbase used what is known as a "direct offering" (sometimes called a "direct listing") to execute its public offering. *Ramsey* Compl. at ¶¶ 39, 53. On March 23, 2021, the Company filed its final amended Registration Statement with the SEC on Form S-1/A. *Id.* at ¶ 39. Its Prospectus on Form 424B4 followed on April 14, 2021, registering nearly 115 million shares of Class A common stock from its registered shareholders for resale. *Id.* at ¶ 40. No new shares would be issued—instead, registered shareholders would purportedly elect whether they would sell their respective shares, and Coinbase would purportedly not receive any of the proceeds from these sales. *Id.*

The Company's registration materials, however, assured investors that "We believe our existing cash and cash equivalents will be sufficient to meet our working capital and capital expenditure needs for at least the next 12 months." *Id.* at ¶ 46. These materials also touted the efficiency and effectiveness of the Coinbase platform, stating, *inter alia*: "Our custom technology platform is built to deal with the real-time, global and 24/7/365 nature of crypto asset markets, enabling us to rapidly research, develop, and launch new products and features." *Id.* at ¶ 45. Investors would later learn than neither was true.

The Company set its offering reference price of $250.00 per share, giving the Company a nearly $50 billion valuation.[2] When Coinbase stock began trading on the NASDAQ on April 14, 2021, it opened

---

[2] *See* Levi Sumagaysay, *Coinbase reference price set at $250 as it prepares to go public Wednesday*, MARKETWATCH.COM (Apr. 13, 2021) https://www.marketwatch.com/story/coinbase-reference-price-set-at-250-as-it-prepares-to-go-public-wednesday-11618353455#:~:text=Coinbase%2C%20one%20of%20the%20first,a%20nearly%20%2450%20billion%20valuation.

at a trading price of $381.00 per share. *Ramsey* Compl., ¶¶ 6, 41, 57.

Unbeknownst to investors, and despite the Company's assurances that it possessed sufficient cash to satisfy its obligations for the next twelve months, at the time of Coinbase's IPO the Company required a substantial amount of additional cash. *Id.* at ¶¶ 47-51. The Company's platform, which had previously been touted as "easy-to-use," and "built to deal with the real-time, global and 24/7/365 nature of crypto asset markets," was also susceptible to service-level disruptions. *Id.* None of this material information was disclosed by Defendants in the above-mentioned offering materials. *Id.* at ¶ 51. Consequently, investors were stunned when on May 17, 2021 Coinbase announced its intention to raise approximately $1.3 billion *via* the sale of convertible bonds. *Id.* at ¶ 53. On this news, Coinbase's common stock declined some 3.7% to close at $239.00 per share on May 18, 2021. *Id.* at ¶ 54. Then, on May 19, 2021, Coinbase revealed substantial technical problems stymieing use of its platform, including delays due to network congestion. *Id.* at ¶ 55. On this news, Coinbase's stock declined even further, falling approximately 6% to close at $224.80 per share on May 19, 2021. *Id.* at ¶ 56.

The *Ramsey* Action was filed on July 22, 2021, followed by the *Klein* and *Catterlin* Actions in the subsequent weeks. *See* § II, *supra*. On the date that the first lawsuit was filed, Coinbase's common stock closed at $226.08—a decline of approximately 40.7% since its opening price of $381.00 on April 14, 2021.

## IV. ARGUMENT

### A. The Related Actions Should Be Consolidated

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. *See Deinnocentis v. Dropbox, Inc.*, 2020 U.S. Dist. LEXIS 8680, at *6-7 (N.D. Cal. 2020); *Ali v. Intel Corp.*, 2018 U.S. Dist. LEXIS 89401, at *3-4 (N.D. Cal. 2018). Courts recognize that securities class actions are ideally suited to consolidation pursuant to Rule 42(a) because "'unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved.'" *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018).[3] Accordingly, Mr.

---

[3] All emphasis is added, and internal citations/quotations omitted unless otherwise indicated.

Bethune respectfully suggests that these Actions are ideally suited for consolidation.

Here, and as set forth in § II, *supra*, the Related Actions bring claims on behalf of Coinbase investors who purchased or otherwise acquired its Class A common stock pursuant to Coinbase's registration statements and prospectus filed with the SEC, which provided for the sale of up to 114,850,769 shares in the direct listing IPO which took place on April 14, 2021. Claims are asserted for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. *See Ramsey* Compl., ¶¶ 63-87; *see also Klein* Compl., ¶¶ 56-79; *and Catterlin* Compl., ¶¶ 54-74. The putative Class definition(s) are near-identical in all three Related Actions. *See Ramsey* Compl., ¶ 1; *Klein* Compl., ¶ 1; and *Catterlin* Compl., ¶ 5.

Additionally, the named Defendants are substantially similar across all three Related Actions. Here, the corporate and individual defendants are identical in all three Related Actions. *See Ramsey* Compl., ¶¶ 14-25; *see also Klein* Compl., ¶¶ 14-25; *and Catterlin* Compl., ¶¶ 13-24.[4] Additionally, the *Ramsey* and *Catterlin* Actions also name the same venture capital firms as Defendants in this matter. *See Ramsey* Compl., ¶¶ 27-32; *see also Catterlin* Compl., ¶¶ 25-30. The only variation between the Actions is the absence of the venture capital firms from the *Klein* Action. This minor variation does not preclude consolidation. *Miller v. Ventro Corp.*, 2001 U.S. Dist. LEXIS 26027, at *17 (N.D. Cal. 2001); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999).

The Related Actions also make substantially similar allegations that Defendants made false and misleading statements concerning the adequacy of Coinbase's cash reserves and its technical capability to serve its user base. Accordingly, the Related Actions should be consolidated. *See Shotwell v. Zillow Grp.*, 2018 U.S. Dist. LEXIS 2495, at *4 (W.D. Wash. 2018); *Klein v. Ellison*, 2020 U.S. Dist. LEXIS 223685, at *4-5 (N.D. Cal. 2020).

### B. Mr. Bethune Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure to appoint a lead plaintiff in a securities fraud class action. 15 U.S.C. § 77z-1(a)(3)(B)(i). First, the plaintiff who files the initial action must publish a notice within 20 days of filing the action advising the class of his right to file a motion for appointment as lead plaintiff.

---

[4] While Defendant Jennifer Jones was not specifically listed in the *Catterlin* Complaint, she is listed by last name in a summary paragraph. *See Catterlin* Compl., ¶ 24.

*Id.* § 77z-1(a)(3)(A). Here, notice in this matter was published on July 22, 2021 via *Business Wire*. *See* Abadou Decl., Ex. D.

Next, within 60 days of publication, members of the proposed class are entitled to seek appointment as lead plaintiff. *Id.* § 77z-1(a)(3)(A)-(B). The Court then appoints as lead plaintiff the member of the class that is determined to be "most capable" of adequately representing the interest of class members. *Id.* § 77z-1(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)  has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Finally, once the presumption attaches, it can only be overcome upon a showing of proof that the presumptive lead plaintiff will not fairly and adequately represent the class or is subject to unique defenses that will render the presumptive lead plaintiff incapable of doing so. *See id*. § 77z-1(a)(3)(B)(iii)(II). Applying this three-step process here, Mr. Bethune respectfully suggests that he should be appointed lead plaintiff.

### 1. Mr. Bethune's Motion is Timely

Notice of this matter was published pursuant to the PSLRA on July 22, 2021 over *Business Wire*. *See* Abadou Decl., Ex. D. *Business Wire* is a widely circulated national business-oriented wire service which is routinely found to satisfy the PSLRA's statutory notice requirements in this District. *See Greene v. Granite Constr. Inc.*, 2019 U.S. Dist. LEXIS 206455 (N.D. Cal. 2019); *In re LendingClub Sec. Litig.*, 2018 U.S. Dist. LEXIS 44835 (N.D. Cal. 2018) (ordering publication of proposed and summary notices of preliminary approval of class certification over *Business Wire*).

Mr. Bethune's motion has been filed within 60 days of this notice and is therefore timely.

### 2. Mr. Bethune Possesses the Largest Financial Interest in the Relief Sought by the Class

The next step in the sequential process requires the Court to consider which movant possesses the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb); *see also Cavanaugh*, 306 F.3d at 730-31. To make this assessment, Courts generally consider four factors: (i) the number of shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate losses suffered. *Doherty v. Pivotal Software, Inc.*, 2019 U.S. Dist. LEXIS 195360, at *13 (N.D. Cal. 2019) (applying four-factor test in securities fraud case alleging Section 11 claims).

To the best of his knowledge, Mr. Bethune possesses the largest financial interest in the relief sought by the putative class because he purchased 1,914 shares of Coinbase common stock and retained 1,300 shares at the time that this lawsuit was filed. *See* Abadou Decl., Ex. B. In connection with those purchases, Mr. Bethune's net expenditures total $553,225.72, and his out-of-pocket losses total $259,321.72.[5] *See id.*; *Cavanaugh*, 306 F.3d at 730-32. As of the date of this filing, he is unaware of any other movant possessing a greater financial interest in this matter.

### 3. Mr. Bethune Meets the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of lead plaintiffs, Rule 23(a) requires generally that his claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interest of the class. *See* FED. R. CIV. P. 23. As detailed below, Mr. Bethune satisfies the typicality and adequacy requirements of Rule 23(a).

The typicality requirement of Rule 23(a)(3) is satisfied when a representative "plaintiff's claim

---

[5] Damages on retained shares in a Section 11 case are often determined as "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) [and] the value thereof as of the time such suit was brought[.]" *See* 15 U.S.C. § 77k(e). However, because Coinbase's public offering was executed through a direct offering rather than a traditional IPO, no offering price exists. *See, generally, Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 381 (N.D. Cal. 2020). If the Court uses the opening price from the first day of trading ($381.00) as a substitute, then Mr. Bethune's recoverable losses are approximately $200,659.20. *See* Abadou Decl., Ex. B.

arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Monachelli v. Hortonworks, Inc.*, 2016 U.S. Dist. LEXIS 71575, at *6 (N.D. Cal. 2016). Mr. Bethune's claims are typical to those of other putative class members. *See Wong v. Arlo Techs., Inc.*, 2019 U.S. Dist. LEXIS 77186, at *8-9 (N.D. Cal. 2019). Like other putative class members, Mr. Bethune: (i) purchased or otherwise acquired Coinbase securities during the Class Period; (ii) did so in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (iii) suffered damages from purchasing artificially inflated securities and then suffered harm when the truth was revealed. *See* Abadou Decl., Ex's. A, B, & C.

A representative party must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *see Ziolkowski v. Netflix, Inc.*, 2017 U.S. Dist. LEXIS 91848, at *9-10 (N.D. Cal. 2017). Mr. Bethune's interests are clearly aligned with the members of the class and there is no antagonism between his interests and those of other class members. Mr. Bethune is a resident of Rockledge, Florida, veteran of the United States Air Force, and has worked in aeronautics and astronautics for more than thirty years, including at Kennedy Space Center. Abadou Decl., Ex. C at ¶¶ 2-3. Bringing more than three decades of experience investing in the capital markets (*id.* at ¶ 4), he has amply demonstrated his adequacy as a class representative by signing a sworn certification and declaration affirming his willingness to serve as, and assume the fiduciary responsibilities of, a lead plaintiff. Abadou Decl., Ex. A (certification); Ex. C (Mr. Bethune's Declaration). In addition, Mr. Bethune has selected counsel highly experienced in prosecuting securities class actions as proposed lead counsel. *Id.*, Ex. E.

### C. This Court Should Approve Mr. Bethune's Choice of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 732; *In re Cohen*, 586 F.3d 703, 709-10 (9th Cir. 2009). Here, Mr. Bethune has selected KSF as Lead Counsel for the class following his own independent assessment of the firm's qualifications. *See* Abadou Decl., Ex. C at ¶¶ 6-7. KSF is a national law firm with presences in Louisiana, California, New Jersey, and New York and courts have repeatedly found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See id.*, Ex. E; *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal.

2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case."); *Dougherty v. Esperion Therapeutics*, 2020 U.S. Dist. LEXIS 216515, at *22-23 (E.D. Mich. 2020) (approving KSF as co-lead and co-class counsel); *Kasper v. AAC Holdings, Inc*., 2017 U.S. Dist. LEXIS 109608, at *42-43 (M.D. Tenn. 2017) (same); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 U.S. Dist. LEXIS 49786, at *29 (S.D.N.Y. 2020) (approving KSF as lead counsel).

KSF also recently represented the court-appointed lead plaintiff in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019), which significantly altered the federal securities pleading requirements and civil pleading practice generally in this Circuit. *See* Abadou Decl., Ex. E. KSF also served as counsel to the lead plaintiff in the *Halliburton* securities litigation matter, where lead plaintiff twice prevailed before the United States Supreme Court and ultimately obtained a $100 million recovery for the class. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 134 S. Ct. 2398 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179 (2011). Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber legal representation available from KSF. *See* Abadou Decl., Ex. E.

## V. CONCLUSION

For the foregoing reasons, Mr. Bethune respectfully request that the Court: (i) appoint him as Lead Plaintiff; and (ii) approve his selection of KSF as Lead Counsel for the class.

Dated: September 20, 2021                                              Respectfully submitted,

**KAHN SWICK & FOTI, LLP**

By:     *s/ Ramzi Abadou*
Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(to be admitted *pro hac vice*)
Alexander L. Burns
(to be admitted *pro hac vice*)
Morgan M. Embleton
(to be admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
morgan.embleton@ksfcounsel.com

*Proposed Lead Counsel and Counsel for Movant, Charles Bethune, III*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper *via* the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

 *s/ Ramzi Abadou*
 RAMZI ABADOU

# Mailing Information for a Case 3:21-cv-05634-VC Ramsey v. Coinbase Global, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **John T. Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,tsaviano@scott-scott.com,scott-scott@ecf.courtdrive.com,tharo@scott-scott.com,edewan@scott-scott.com,kjager@scott-scott.com

- **Aryeh Kaufman**
  aryeh@akaufmanlegal.com

- **Thomas L Laughlin , IV**
  tlaughlin@scott-scott.com,rswartz@scott-scott.com,scott-scott@ecf.courtdrive.com,dcolonna@scott-scott.com,efile@scott-scott.com

- **Brian Jared Schall**
  brian@schallfirm.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`