**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD RAMSEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, JENNIFER N. JONES, SUROJIT CHATTERJEE, PAUL GREWAL, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL MANAGEMENT LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD.,<br><br>Defendants. | Case No. 3:21-cv-05634-VC<br><br>**MEMORANDUM OF LAW OF MOVANT DARREN WRIGHT IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>CLASS ACTION<br><br>Judge: Vince Chhabria<br>Hearing: October 28, 2021<br>Time: 2:00 PM<br>Ctrm: 4 – 17th Floor (San Francisco) |

[Additional captions below]

1

MEMORANDUM OF LAW OF MOVANT DARREN WRIGHT IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS – 3:21-cv-05634-VC

| | |
|---|---|
| GABBY KLEIN, On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, JENNIFER N. JONES, SUROJIT CHATTERJEE, PAUL GREWAL, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, and FRED WILSON, <br><br> Defendants. | Case No. 3:21-cv-06049-VC <br><br> Judge: Vince Chhabria |
| MATTHEW CATTERLIN, On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COINBASE GLOBAL, INC., BRIAN ARMSTRONG, SUROJIT CHATTERJEE, PAUL GREWAL, ALESIA HAAS, MARC ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL, LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD., <br><br> Defendants. | Case No. 3:21-cv-06149-VC <br><br> Judge: Vince Chhabria |

Darren Wright ("Mr. Wright") respectfully submits this Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel. Dkt. Nos. 13, 17, 30, 31, 33, and 46.[1]

Ten motions were filed by movants seeking appointment as lead plaintiff and approval of lead counsel.  Currently, there are only seven competing lead plaintiff motions. *Id*. Only one movant, Hsiu-Mei Yu[2] ("Ms. Yu"), claims a larger financial interest than Mr. Wright. The Court should not appoint Ms. Yu as she is inadequate—having made two simultaneous lead plaintiff motions with different law firms supported with false and conflicting information.

In contrast, Mr. Wright, has the second largest financial interest.   Mr. Wright has  2,247 net shares (all purchased on the first day of the Direct Offering and still held) and expended net funds of $897,390. Dkt. No.21-5. Mr. Wright, therefore, has the largest financial interest by the two most determinative and clear factors regarding financial interest—purchasing the largest amount of net shares and expending the largest amount of net funds connected to the Direct Offering. The chart below demonstrates the financial interest of the remaining lead plaintiff movants.

---

[1] On September 27, 2021, Ms. Yu and Minorka Snow filed a notice of withdrawal to the competing motions noting that "on September 20, 2021, [Ms.] Yu filed a separate Motion" for, among other things, appointment as lead plaintiff. Dkt. No. 53. On September 28, 2021, Stanislav Voronov filed a notice of non-opposition to the competing motions stating that he "does not appear to have the largest financial interest in this litigation within the meaning of the PSLRA." Dkt. No. 54. On September 29, 2021, Afshin Nourivand filed a notice of non-opposition to the competing motions stating that he "does not appear to have the largest financial interest in the relief sought by the class." Dkt. No. 55.

[2] With regards to her motion filed without a second Co-Lead Plaintiff (Dkt. No. 17), Ms. Yu received assignments from Wen-Chuan Sung, Wen-Shan Sung, and Wen-Ying Sung, her children, transferring all claims, demands, and causes of action from violations under the federal securities laws in connection with their purchases of Coinbase Global, Inc. securities. Dkt. No. 17-2.

| Movant | Net Shares | Net Funds Expended |
|---|---|---|
| ~~Ms. Yu~~ | ~~20,206~~ | ~~$6,731,654~~ |
| Mr. Wright | 2,247 | $897,390 |
| Steven E. Breitman ("Mr. Breitman") | 2,000 | $704,802 |
| Charles Bethune, III ("Mr. Bethune") | 1,300 | $259,321 |
| Sandhu Chirita ("Mr. Chirita") | 1,050 | $306,269 |
| The McMichael and Casola Group | 248 | $858,042 |
| *Justin McMichael* ("McMichael") | 248 | $595,917 |
| *Vincenzo Casola, as Trustee of the Casola Trust* ("Casola") | 0 | $262,125 |
| Timothy Flynn ("Mr. Flynn") | 0 | $466,770 |

Mr. Wright is also a sophisticated investor with over 30 years of investing experience. Dkt. No. 21 at 8. He has a college degree and is a business owner. *Id*. He advises high-net-worth families on how to get their financial houses in order and achieve their financial goals—he is even writing a book on the subject. *Id*. at 9. In short, Mr. Wright should be appointed Lead Plaintiff and his selection of Lead Counsel should be approved.

**ARGUMENT**

**1. MS. YU IS INADEQUATE**

Ms. Yu is inadequate as she filed two self-competing, and materially different, lead plaintiff motions in this action. She has demonstrated that she lacks the ability to control counsel and she lacks a basic understanding of this case.

On September 20, 2021, Ms. Yu filed motion for appointment as lead plaintiff with Minorka Snow as the "Coinbase Investor Group" (the "Group Motion").[3] Dkt. No. 39. On the same day, Ms. Yu filed another motion for appointment as lead plaintiff with assignments from her children. Dkt. No. 39. *See Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (a group's "principal member" moved twice with self-competing lead plaintiff

---

[3] No specific client-driven reason is provided as to why Ms. Yu decided to team up with Ms. Snow. Ms. Snow's financial interest, 1,000 net shares purchased and $364,000 net funds expended, is a small fraction of Ms. Yu's.

4

motions which "blatant gaffe [did] not bode well for [his] adequacy" and neither of his lead plaintiff motions were granted).

Ms. Yu stated in a declaration filed with her non-group motion, signed under penalty of perjury (Dkt. No. 17-5 at 5), that she "discuss[ed] the responsibilities of serving as a lead plaintiff and being satisfied that Levi & Korsinsky, LLP would adequately serve as lead counsel based on the firm's experience, resources, and past successes, I signed a retainer agreement with Levi & Korsinsky, LLP on September 19, 2021." Dkt. No. 17-5 at 4-5 ¶6.  Then, on September 20, 2021, she signed a sworn PSRLA certification with a different law firm which also filed a lead plaintiff motion on her behalf. Dkt. No. 40-2.  This shows that Ms. Yu had no understanding as to what she was signing.

While Ms. Yu attempts to explain away her two motions with a supplemental declaration (Dkt. No. 57), which features incorrect captions[4], the supplemental declaration raises more questions than it answers.  Ms. Yu claims she submitted two certifications because the complaints presented to her were different.  Dkt. No. 57 at 3-4 ¶¶ 6-7. This is problematic for a number of reasons.  <u>First</u>, if true, it demonstrates that Ms. Yu did not understand the lead plaintiff process or the claims in this case.  <u>Second</u>, it also demonstrates that she either did not review any complaints or is incapable of reviewing the complaints with the level of diligence required of a lead plaintiff. <u>Lastly</u>, Ms. Yu's explanation is not credible, as she apparently has no issue submitting incorrect sworn PSLRA certifications with the Court.  In her Group Motion she filed a certification which stated that she "purchased 20,206 shares of Coinbase common stock on April 15, 2021" but that same certification later lists her trades—those 20,206 shares purchased—*over two days*.[5] Dkt. No. 40-2; *see also* Dkt. No. 40-4.  With her non-group motion, her sworn PSLRA certification includes the same transactions as listed in the Group Motion but identifies the transactions by account(s), and including assignments from her children for the relevant account(s) and transactions. Dkt. No. 17-2 at 3-4.  These errors in Ms. Yu's submission further substantially weigh against her adequacy.  *See, Camp v. Qualcomm Inc.,* 2019 WL 3554798, at *2 (S.D. Cal.

---

[4] *See* Dkt. No. 56.
[5] Dkt. No. 40-2 at 2 ¶4.

Aug. 5, 2019) (finding material errors in movant's submissions "militate against appointment and render [her] inadequate to serve as lead plaintiff funder Rule 23's adequacy requirement.").

In sum, Ms. Yu is inadequate and should be rejected by the Court.

## 2. MR. WRIGHT SHOULD BE APPOINTED LEAD PLAINTIFF

"The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). As Ms. Yu is inadequate and her lead plaintiff motion(s) should be denied, the Court must follow this sequential path and consider Mr. Wright because he has the next largest financial interest.

Mr. Wright, 2,247 net shares and $897,390 of net funds expended on Coinbase stock (all from the first day of the Direct Offering) (Dkt. No.21-5) is the presumptive Lead Plaintiff as he has the remaining largest financial interest *and* satisfies the typicality and adequacy requirements of Rule 23. Mr. Wright should be appointed Lead Plaintiff and his selection of Lead Counsel should be approved.

Courts in this District utilize net shares purchased as the most determinative measure of movants' financial interests—particularly when the artificial inflation is relatively constant. *See, e.g., In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1027 (N.D. Cal. 1999) (concluding net shares purchased should be used to determine financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery"). Here, the corrective information is alleged to have entered the market between May 17, 2021 and May 19, 2021. None of the complaints allege partial corrective disclosures prior to May 17, 2021, and thus the artificial inflation remained constant prior to May 17—when the truth was disclosed. Therefore, net shares purchased and net funds expended are a better metric for determining financial interest. *In re Critical Path, Inc. Sec. Litig.,* 156 F.Supp.2d 1102, 1108 (N.D. Cal. 2001) (finding net shares purchased "determinative" of financial interest and that this approach assumes that the "fraud premium," which is the amount by which the stock is inflated because of the alleged misrepresentations, stayed constant throughout the class period").

Additionally, Mr. Wright *only* purchased his shares on the first day of the Direct Offering, which eliminates potential unique standing defenses. In *Pirani v. Slack Techs., Inc.*, 2021 WL 4258835, at *2 (9th Cir. Sept. 20, 2021) the Ninth Circuit addressed the question of Section 11 standing for investors in a direct offering, like Coinbase. There the Court held that a plaintiff adequately alleged Section 11 standing by asserting that he purchased on the *date* of the direct offering.[6] Additionally, the Ninth Circuit noted in a footnote that the filing of an S-8 registration statement for employee shares did not defeat standing because it was speculative that the shares at issue were from different registration statements given the facts of that case which included that plaintiff purchasing shares on the direct offering date. *Id.* at *5 n.5. Like Slack, Coinbase issued an S-8 registration statement at the time of the Direct Offering[7], but for those who purchased shares after the Direct Offering date, tracing challenges are less speculative.

In short, Mr. Wright is not subject to unique standing defenses as he purchased all of his shares on the first day of the Direct Offering.

As Mr. Wright has made a *prima facie* demonstration of his typicality and adequacy (Dkt. No. 21 at 8-9), and has the largest remaining financial interest, Mr. Wright is the presumptive lead plaintiff. *Cavanaugh*, 306 F.3d at 732. Because no movant has rebutted the presumption in favor of Mr. Wright with proof that he is inadequate or atypical, Mr. Wright must be appointed Lead Plaintiff.

**3. MR. WRIGHT'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

---

[6] While that same plaintiff also alleged that he purchased shares several months after the direct offering, the majority and the dissent both relied on the allegation that the plaintiff alleged he purchased on the date of the direct offering. *Slack Techs., Inc.*, 2021 WL 4258835, at *2 and *8.
[7] https://www.sec.gov/Archives/edgar/data/0001679788/000162828021006349/coinbaseglobalincs-8.htm.

Mr. Wright has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Rosen Law has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. Nos. 21 at 9; 21-6. Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. Dkt. No. 17-5. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen as the Number 3 securities class action firm both in terms of amount recovered for investors–$438,340,000–and the number of settlements–12.[8] Founding partner Laurence Rosen was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[9]

**4. COMPETING MOTIONS SHOULD BE DENIED**

The competing motions should be denied as Mr. Wright satisfies the requirements of Rule 23, has the greatest remaining financial interest in the litigation, and should therefore be appointed Lead Plaintiff without further analyses. *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical."). That said, some facts bear noting about the competing movants.

The Court should not appoint unrelated groups of lead plaintiffs. "Although the PSLRA allows groups to serve as lead plaintiffs, 'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Tsirekidze*, 2008 WL 942273, at *3 (quoting *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447, 451 (C.D. Cal. 2002)); *see also In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019); *Eichenholtz v. Verifone Holdings, Inc.,* 2008 WL 3925289, at *7 (N.D. Cal. Aug. 22, 2008).

---

[8] https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.
[9] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

Courts require members of a group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin v. Micron Tech., Inc.,* 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019). Courts evaluate evidence of:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*See Id.*; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008).

While the McMichael and Casola Group submitted a joint declaration in an effort to meet this burden, their boilerplate declarations are insufficient. The McMichael and Casola Group asserts that their members spoke with each other prior to the lead plaintiff motion being filed, but "what is conspicuously absent [. . .] is any information regarding how these [. . .] apparent strangers [. . .] found each other." *Stires v. Eco Science Solutions, Inc*., 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp*." whose members "span[] the country's geography"); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently); *Kniffin*, 379 F. Supp. 3d at 263  (court not persuaded by declaration that the group would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"); *Takata v. Riot Blockchain, Inc*., 2018 WL 5801379 (D.N.J. Nov. 6, 2018), *reconsideration*

*denied*, 2019 WL 2710273 (D.N.J. June 26, 2019) (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the [] court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff."). Further, there is no client-driven reasoning for this grouping, nor the inclusion of additional counsel for Casola.

Finally, the Court should not permit the members of the McMichael and Casola Group to be considered individually as the McMichael and Casola Group did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court did not appoint the McMichael and Casola Group. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze*, 2008 WL 942273, at *4 (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts.").

In short, as the *Tsirekidze* Court noted, "[t]here is simply no evidence that this 'group' has a meaningful connection" and the Court should deny the motions of the McMichael and Casola Group. 2008 WL 942273, at *5.

In no way is Mr. Wright conceding or acknowledging that the competing movants are adequate or that their claims are typical. Mr. Wright reserves the right to address the competing movant's adequacy or typicality, should the Court reach those motions.

## CONCLUSION

For the foregoing reasons, Mr. Wright respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Mr. Wright as Lead Plaintiff of the Class; (3) approving the Mr. Wright's selection of Rosen Law as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: October 4, 2021.                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

**PROOF OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On October 4, 2021 I electronically filed the following **MEMORANDUM OF LAW OF MOVANT DARREN WRIGHT IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing in true and correct.

Executed on October 4, 2021.

/s/ Laurence M. Rosen
Laurence M. Rosen