Thomas L. Laughlin, IV (admitted *pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Rhiana L. Swartz (*pro hac vice* forthcoming)
Jonathan M. Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
Facsimile:  212-233-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

*Attorneys for Lead Plaintiff Movants*
*Justin McMichael and Vincenzo Casola*

[Additional Counsel on Signature Page.]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONALD RAMSEY, Individually and on Behalf of All Others Similarly Situated,<br><br>                                     Plaintiffs,<br><br>     v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, JENNIFER N. JONES, SUROJIT CHATTERJEE, PAUL GREWAL, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL MANAGEMENT LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD.<br><br>                                     Defendants.<br><br>*Caption continued on following page.* | Case No. 3:21-cv-05634-VC<br><br>**JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY**<br><br>Judge: Hon. Vince Chhabria<br>Date:   October 28, 2021<br>Time:  2:00 p.m.<br>Dept.:  4, 17th Floor |

| | | |
|---|---|---|
| 1 | | |
| 2 | GABBY KLEIN, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:21-cv-06049-VC |
| 3 | Plaintiffs, | |
| 4 | v. | |
| 5 | COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, JENNIFER N. JONES, SUROJIT CHATTERJEE, PAUL GREWAL, MARC L. ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, and FRED WILSON, | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | Defendants. | |
| 10 | | |
| 11 | MATTHEW CATTERLIN, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:21-cv-06149-VC |
| 12 | Plaintiff, | |
| 13 | v. | |
| 14 | COINBASE GLOBAL, INC., BRIAN ARMSTRONG, SUROJIT CHATTERJEE, PAUL GREWAL, ALESIA HAAS, MARC ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL, LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD, | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | Defendants. | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.     McMichael & Casola Have the Largest Loss of Any Adequate Movant ............... 2

          A.     Yu Is Not the "Most Adequate Plaintiff" Due to Her Conflicting Motions ................................................................................................... 2

          B.     Yu's Legal Precedent Is Inapt and Her Explanation for the Dueling Motions Is Insufficient ............................................................................. 3

    II.    The Arguments By the Competing Movants as to McMichael & Casola's Loss and Adequacy Are Unavailing ................................................................................ 6

          A.     McMichael & Casola's Loss Is All Recognizable for Lead Plaintiff Determination Purposes ................................................................................ 6

          B.     Negative Causation Is Not Appropriately Considered at the Lead Plaintiff Stage, and Is Not a Unique Defense ............................................. 7

          C.     McMichael & Casola Are a Proper Group .............................................. 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akerman v. Oryx Commc'ns Inc.*,
    810 F.2d 336 (2d Cir. 1987)..................................................................................................6

*Cullinan v. Cemtrex, Inc.*,
    287 F. Supp. 3d 277 (E.D.N.Y. 2018) ................................................................................3, 4

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)..............................................................................................................6

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C07-06140-MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008).................................7

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
    262 F.R.D. 262 (S.D.N.Y. 2009) ..........................................................................................9

*Galmi v. Teva Pharms. Indus. Ltd.*,
    302 F. Supp. 3d 485 (D. Conn. 2017)...................................................................................9

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) ................................................................................................7

*In re Aqua Metals Sec. Litig.*,
    No. 4:17-cv-07142, 2018 WL 4860188 (N.D. Cal. May 23, 2018).........................................2

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ................................................................................................1

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)..............................................7

*In re Critical Path, Inc. Sec. Litig.*,
    156 F. Supp. 2d 1102, 1105 (N.D. Cal. 2001) .....................................................................7

*In re Lendingclub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017) ................................................................................7

*In re Lyft Sec. Litig.*,
    No. 19-CV-02690-HSG, 2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) ........................2, 7, 8, 9

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................................7

ii

*In re Vaxart Sec. Litig.*,
　　No. C 20-05949-VC (N.D. Cal.)..................................................................................2, 10

*In re Versata, Inc. Sec. Litig.*,
　　C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001)..............................................10

*In re Worlds of Wonder Sec. Litig.*,
　　35 F.3d 1407 (9th Cir.1994), *cert. denied sub. nom. Miller v. Pezzani*, 516
　　U.S. 868 (1995)....................................................................................................................6

*Juliar v. Sunopta Inc.*,
　　No. 08 CIV. 1070, 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009)............................................9

*Khunt v. Alibaba Grp. Holding Ltd.*
　　102 F. Supp. 3d 523, 529 (S.D.N.Y. 2015)............................................................................4

*Levine v. AtriCure, Inc.*,
　　508 F. Supp. 2d 268 (S.D.N.Y. 2007)........................................................................6, 7, 9

*Malriat v. QuantumScape Corp.*,
　　No. 3:21-CV-00058, 2021 WL 1550454, (N.D. Cal Apr. 20, 2021)......................................10

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
　　65 F.3d 1044 (2d Cir. 1995)....................................................................................................9

*Mulligan v. Impax Lab'ys, Inc.*,
　　No. C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013).......................................10

*Pardi v. Tricida*,
　　No. 21-CV-00076, 2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ............................................3

*Perlmutter v. Intuitive Surgical, Inc.*,
　　No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011)....................................7

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
　　68 F. Supp. 3d 390 (S.D.N.Y. 2014).......................................................................................4

*Sallustro v. CannaVest Corp.*,
　　93 F. Supp. 3d 265 (S.D.N.Y. 2015).......................................................................................7

*Singer v. Nicor Inc.*,
　　No. 02-CV-5168, 2002 WL 31356419 (N.D. Il. Oct. 17, 2002)..............................................3

*Soe v. Progenity, Inc.*,
　　No. 20-cv-01683, 2020 WL 7129365 (S.D. Cal. Dec. 3, 2020) .............................................9

*Subramanian v. Watford*,
　　No. 20-cv-02652, 2021 WL 1697147 (D. Colo. Apr. 19, 2020) .............................................3

iii

JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD
PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY

*Tinsley v. Snyder,*
    922 F.3d 957, 969-70 (9th Cir. 2019) .......................................................................................10

*Tsirekidze v. Syntax-Brillan Corp.,*
    No. 07-CV-2204, 2008 WL 942273 (D. Ariz. April 7, 2008) ...............................................3, 5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.,*
    589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)..............................................................................10

**Statutes, Rules, and Regulations**

15 U.S.C.
    §77k(e)(2) ...............................................................................................................................1, 6
    §77z-1(a)(3)(B)(iii)(I)(bb) ...........................................................................................................1

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................................................1, 2

iv

JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD
PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY

**SUMMARY OF ARGUMENT**

The PSLRA and the Ninth Circuit have set a straightforward test for determining the most "appropriate" movant for appointment as lead plaintiff. First, the Court must determine which movant has the largest financial interest; and second, the Court appoints that movant as long as it is otherwise adequate and typical within the meaning of Rule 23. *See* 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(bb); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Under this test, lead plaintiff Movants Justin McMichael and Vincenzo Casola ("McMichael & Casola") should be appointed. The only movant with a larger loss is Yu. Yu filed conflicting motions and sworn statements with this Court, and she failed to credibly explain herself or demonstrate that she can supervise the progression of this action or her counsel. She is therefore clearly inadequate to lead this case.

McMichael & Casola should be appointed because they suffered the next largest loss (McMichael alone suffered more than any other individual) and because they are adequate and typical. The attack by competing movants on McMichael & Casola's asserted financial interest based on loss causation concepts is misguided and not applicable to the Securities Act claims brought in this case. This case does not bring claims under the Securities Exchange Act of 1934 (the "Exchange Act"), which includes a loss causation element. Rather, the Securities Act sets forth a straightforward calculation of an investor's damages and, under that statutory test, McMichael & Casola's claimed losses are all recoverable. 15 U.S.C. §77k(e)(2). Thus, based on a review of the "four corners of the complaint," McMichael & Casola have the largest loss. While Defendants have an affirmative defense of "negative causation," that defense cannot be assessed at the lead plaintiff stage because it is both fact and expert intensive and can only be developed through discovery. Thus, this Court should not accept the invitation of the competing movants to engage in a merits inquiry into that issue, particularly since negative causation is not a unique defense; but, rather, a defense that the entire class will have to face to prove damages. At least

1

JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY

one court in this District has recently reached a similar conclusion. *See In re Lyft Sec. Litig.*, No. 19-CV-02690-HSG, 2020 WL 1043628, at **4-5 (N.D. Cal. Mar. 4, 2020).[1]

McMichael & Casola are also a proper grouping under this Court's precedent and that of many other courts. McMichael & Casola sufficiently demonstrated their cohesion and their ability to work together with a Joint Declaration. *E.g.*, *In. re Aqua Metals Sec. Litig.*, No. 4:17-cv-07142, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018); ECF No. 46-5 (Joint Declaration). As this Court has noted, aggregation "is something that some courts allow all the time[.]" Transcript of Lead Plaintiff Hearing in *In re Vaxart Sec. Litig.*, No. C 20-05949-VC (N.D. Cal.) (hereinafter "Vaxart Tr."), annexed to the Supplemental Declaration of Thomas L. Laughlin, IV (the "Laughlin Supp. Decl.") as Ex. 1. This is particularly true where, as here, a member of the group has the largest loss of any individual movant.

With statutory losses of $801,973, McMichael & Casola are the presumptive lead plaintiffs, and that presumption has not been rebutted. Therefore, McMichael & Casola should be appointed lead plaintiff.

**ARGUMENT**

**I.   McMichael & Casola Have the Largest Loss of Any Adequate Movant**

  **A.   Yu Is Not the "Most Adequate Plaintiff" Due to Her Conflicting Motions**

Yu filed two conflicting lead plaintiff motions in this case, seeking appointment of two different movants (herself alone and a group including her) and two different law firms. This is a major mistake that demonstrates that Yu is not properly engaged with this matter and not able to effectively communicate with counsel. As many courts have held, the filing of dueling lead plaintiff motions and inaccurate trading data is disqualifing because engagement, supervision, and effective communication with counsel are what is most needed in a lead plaintiff and what Rule 23 demands. *See generally* ECF No. 63 at 6-9 (McMichael & Casola's Opp., hereinafter "Opp."). Furthermore, Yu's two statutory certifications directly conflicted with each other, *see* ECF No. 63

---

[1]   Unless otherwise noted, all citations are omitted and emphasis is added.

2

JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY

at 9-10, and her supplemental declaration offers no explanation for this contradiction whatsoever, *see* ECF No. 57.

### B. Yu's Legal Precedent Is Inapt and Her Explanation for the Dueling Motions Is Insufficient

Yu argues that the filing of a dueling lead plaintiff motions is not disqualifying, but a review of the decisions cited by her lends further support to the opposite conclusion because Yu could not find a ***single*** decision that actually addressed the adequacy of a movant who filed two lead plaintiff motions and found that movant to be adequate. Yu Opp. (ECF No. 62) at 6. By contrast, there are three decisions rejecting such movants, including a recent decision from this District, and many decisions rejecting movants who made other serious errors in their lead plaintiff motions. *See, e.g.*, *Pardi v. Tricida*, No. 21-CV-00076, 2021 WL 1381271, *2 (N.D. Cal. Apr. 2, 2021); *Tsirekidze v. Syntax-Brillan Corp.*, No. 07-CV-2204, 2008 WL 942273, *5 (D. Ariz. April 7, 2008); *Singer v. Nicor Inc.*, No. 02-CV-5168, 2002 WL 31356419, *2 (N.D. Il. Oct. 17, 2002); Opp. at 6-7 (collecting cases on errors in lead plaintiff papers). There is also a long-standing practice of plaintiffs' counsel acknowledging the inadequacy of a twice-filing movant by withdrawing both motions. *Id*. at 7. Thus, the totality of authority before the Court clearly holds that filing dueling lead plaintiff motions falls below a widely held consensus as to the standard of conduct for an adequate plaintiff and is disqualifying.

The two lead decisions cited by Yu, *Subramanian v. Watford*, No. 20-cv-02652, 2021 WL 1697147 (D. Colo. Apr. 19, 2020), and *Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277 (E.D.N.Y. 2018), do not address the adequacy of a twice-filing movant. Rather, both decisions appointed groups of individuals as lead where one member of the group that was ultimately appointed had also been listed as part of another group initially. *Subramanian*, ECF Nos. 20 & 26; *Cullinan* at 282 n.9. Accordingly, both of these decisions are factually distinguishable because they involved groups, not a single inadequate twice-filing movant upon whom the class would depend. More importantly, neither decision considers the issues here; the lead plaintiff motions were resolved on other grounds. In *Subramanian*, the court did not address the duplicate motions issue and it appears

3

1  the issue was not before the Court. *See generally Subramanian*, 2021 WL 1697147. Similarly, in *Cullinan*, while the court did refer to the duplicate motions, it did not consider whether that fact rendered the duplicative movant inadequate. *Cullinan*, 287 F. Supp. 3d at 282. Similarly, in *In re Altisource Portfolio Solutions Sec. Litig.*, the appointment was unopposed and the issue of the duplicative movant's adequacy was therefore not contested. No. 14-cv-81156 (S.D. Fla.), ECF Nos. 18 (noting motion was unopposed) & 24 (Order).

The other two decisions cited by Yu are easily distinguishable and are also from outside this Circuit. In *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, the duplicative movants were not the same; two different funds made motions. 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014). The court found that "the two funds are distinct legal entities" and therefore it was "not surprising" that each had its own counsel and made its own motion. *Id.*, at 400. This is clearly not the case here where one person, Yu, sought to be appointed alone and also with another investor. *Khunt v. Alibaba Grp. Holding Ltd.* similarly dealt with two different legal entities, an individual and a related company. 102 F. Supp. 3d 523, 529 (S.D.N.Y. 2015). The two movants were not duplicative, they had separate trades and losses and the two motions were made because of a reasoned decision by the movants. *Id.*, at 532 & 537.

Accordingly, the law does not support Yu's position. Indeed, a decision holding her adequate despite the dueling filings and certification errors would break new ground in lowering the bar for movants' conduct.

Yu's factual explanation for her two motions is just as flawed because it confirms that there are no special circumstances here that led to the filings; this is just the typical case where a movant – even with the aid of counsel – was unable to develop a sufficient understanding of the proceedings and filings. Yu admits she was provided with very similar class action complaints arising out of Coinbase's Offering and that she was in communication with two sets of lawyers regarding those complaints. ECF No. 57 at ¶¶2-8. Yet somehow, she was not able to discern that these complaints were related and did not raise the issue with her counsel. *Id.* at ¶¶4-7. Further, her counsel was not able to provide her with a sufficient understanding of the proceedings or the

4

significance of the lead plaintiff motions. *Id.* Due to these issues, Yu claims she mistakenly believed she was seeking to prosecute two separate, but substantially similar, class actions in the same Court. *Id.* at ¶7. These admitted facts establish a lack of adequacy, a disqualifying inability to manage counsel and understand the proceedings. *Tsirekidze*, 2008 WL 942273, at *5.

Yu's explanation also suffers from credibility issues because it appear to be a stock lawyer-drafted excuse. Yu's counsel in this matter submitted similar declarations in the *Subramanian* and *Cullinan* cases. In each case, the member of the group who had also moved as part of another group's motion submitted a declaration providing those courts the exact same explanation as is offered here for the movant's mistake; that is, that the movant "mistakenly believed" that the other law firm was working on a different lawsuit than the one for which the movant had retained Levi & Korsinsky. *Compare* ECF No. 57 at ¶3 ("I was not aware that this was the same lawsuit being investigated by Levi & Korsinsky and mistakenly believed it was a separate matter.") *with Subramanian*, ECF No. 30-3 at ¶6 ("I mistakenly believed that Portnoy was investigating a different lawsuit than the one I had retained Levi & Korsinsky for"); *Cullinan*, ECF No. 27-2 at ¶¶7-8 ("I mistakenly believed that Goldberg was investigating a different lawsuit than the one I had retained [Levi & Korsinsky] for") (these declarations are annexed to the Laughlin Supp. Decl. as Exs. 2-3). Similarly, in *Subramanian*, less than a year ago, the duplicative movant also specifically stated, like Yu, that this mistaken belief was "because there were two separate complaints filed against [the company] with two different case captions." *Compare* ECF No. 57 at ¶7 ("The complaint sent to me by WeissLaw was not the same complaint I received from Levi & Korsinsky.") *with Subramanian*, ECF No. 30-3. Like Yu, both these movants also attested that they signed a certification with the other firm (in addition to Levi & Korsinsky) "to increase my chances of recuperating my losses." *Compare* ECF No. 57 at ¶7 *with Subramanian*, ECF No. 30-3 at ¶6; *Cullinan*, ECF No. 27-2 at ¶7.

Finally, Yu has still failed to address why she is adequate not withstanding her incorrect certification or the other questions concerning her motion. *See* ECF No. 60 at 11.

5

JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY

## II. The Arguments By the Competing Movants as to McMichael & Casola's Loss and Adequacy Are Unavailing

### C. McMichael & Casola's Loss Is All Recognizable for Lead Plaintiff Determination Purposes

Competing movants Wright and Flynn incorrectly argue that McMichael & Casola do not have the next largest financial interest after Yu because they sold the majority of their Coinbase shares the day before May 18, 2021. *See* ECF No. 61 at 7-9 (Flynn Opp.) & 60 at 6 (Wright Opp.); *see also* Compl. (ECF No. 8) ¶¶53-56. This argument is in conflict with the Securities Act, which dicates a straightforward calculation of damages and ***does not*** include a loss causation element. Wright and Flynn mistakenly seek to apply the loss causation element of Section 10b (Exchange Act) claims to this Section 11 (Securities Act) case even though the two statutes set up completely different damages schemes.

Under Section 11(e)(2), McMichael & Casola "may recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and [ ] the price at which such security shall have been disposed of in the market before suit." 15 U.S.C. §77k(e)(2). This loss is ***presumed*** because §11(e) also makes the absence of loss causation, also known as "negative causation," an affirmative defense that Defendants must prove to reduce or avoid liability under §11. *Id.*; *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir.1994), *cert. denied sub. nom. Miller v. Pezzani*, 516 U.S. 868 (1995); *Akerman v. Oryx Commc'ns Inc.*, 810 F.2d 336, 341 (2d Cir. 1987); *Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007) ("Loss causation (i.e. a causal connection between the material misrepresentation or omission and plaintiff's loss) is not an element of a §11 claim under the Securities Act."). Thus, the damages calculation under the Securities Act is totally different from the calculation under the Exchange Act, which requires plaintiffs to plead and prove loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (loss causation is a required element of a §10(b) claim). Following §11(e)'s straightforward formula, McMichael & Casola have damages of approximately $801,973. ECF No. 46-6. For this reason, the decisions cited by Flynn and Wright concerning the calculation of damages in the

6

context of Exchange Act claims are entirely inapt.[2]  McMichael and Casola's recoverable damages on their Securities Act claim is $801,973, greater than any competing movant's recoverable losses.

### D.    Negative Causation Is Not Appropriately Considered at the Lead Plaintiff Stage, and Is Not a Unique Defense Here

Wright and Flynn also argue McMichael & Casola's sales before May 18, 2021 subject them to a "unique defense" of "negative causation" that renders them atypical.  "Negative causation" requires *Defendants* to show "that the depreciation in value of a plaintiff's stock resulted from factors other than the alleged material misstatement."  *Lyft* at *5 (citing *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013)).  It is therefore for Defendants to prove that the misstatements alleged in the complaint did not cause the losses that have been suffered by purchasers in Coinbase's Offering.

To disqualify McMichael & Casola on this basis is an overreach.  Whether Defendants can meet their burden on "negative causation" as to the May 18, 2021 stock drop, or any other stock drop, is a highly fact-intensive inquiry and generally not appropriate until summary judgment or trial.  *Levine*, 508 F. Supp. 2d at 272-73.  The only court in this District to address this issue rejected the argument made by Wright and Flynn.  In *In re Lyft Sec. Litig.*, Judge Gilliam "[did] not find that the potential application of [a negative causation] defense down the road" made the movant atypical or inadequate for purposes of choosing a lead plaintiff.  2020 WL 1043628, at *6 (refusing to use "a retained shares method in order to determine recoverable losses" in a Securities Act case) (citing *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1181 (N.D. Cal. 2017) (certifying a Securities Act class and finding typicality despite lead plaintiff's susceptibility to

---

[2]  *See, e.g.*, *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("losses resulting from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public are not to be included in loss calculations for purposes of selecting lead plaintiff"); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *4-6 (N.D. Cal. Feb. 15, 2011) (same).  The following cases cited by Flynn and Wright are all Exchange Act cases:  *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *1 (E.D.N.Y. Mar. 2, 2007); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140-MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1105 (N.D. Cal. 2001); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).

negative causation defense); *Levine*, 508 F. Supp. 2d at 272-73 (negative causation is not generally established at lead plaintiff appointment stage)).

In short, negative causation is a merits issue and an affirmative defense that should not be considered at the lead plaintiff stage because it cannot be properly evaluated at this time. Should Defendants seek to raise a negative causation defense against the class in this case, any lead plaintiff will put in evidence demonstrating that the facts allegedly concealed by the Defendants' misstatements tie to stock price drops that occurred between the Offering date and the date of the amended complaint.[3] Whether Plaintiffs or Defendants ultimately prevail on these matters cannot be decided here. *Lyft*, 2020 WL 1043628, at *6. Relevant stock drops in this case include the following, which all occurred before McMichael & Casola sold their stock:

- On May 5, 2021, after the market closed, the Company announced that it would be shutting down its San Francisco office, which suggested issues with earning a profit and touches on Coinbase's impending but undisclosed need to raise capital. Laughlin Supp. Decl., Ex. 4. On this news, the price of Coinbase stock fell 5.95% on May 6, 2021.[4]

- On May 13, 2021, after the market closed, the Company announced its financial results for the first quarter of 2021 on SEC Form 10-Q. Laughlin Supp. Decl., Ex. 5. This announcement included discussion of the impact of "unanticipated system disruptions," including that $192.6 million of the Company's quarterly revenue was generated by having to sell its own assets during these disruptions rather than acting merely as a market maker. *Id.,* at 43. On this news, the price of Coinbase stock fell 2.54% to close at $258.37 on May 14, 2021, down from its previous close of $265.10.

- Coinbase also announced numerous service-related disruptions between May 11, 2021 and May 14, 2021, when the Company's stock price declined a combined 14.73%. For example, after the markets closed on May 11, 2021, Coinbase announced it was investigating issues affecting customers' ability to trade certain digital currencies including Eosio (EOS) and Dfinity (ICP). Laughlin Supp. Decl., Exs. 6-7. According to the Company, these issues persisted through and until May 12, 2021 and May 13, 2021, respectively. *Id.* On this news, Coinbase stock's price fell 6.40% on May 12, 2021, to close at $283.61 per share, and 6.53% on May 13, 2021, to close at $265.10 per share. In addition, after the markets closed on May 13, 2021, Coinbase reported issues with its ability to verify user IDs, signifying that customers were having difficulty accessing their accounts. Laughlin Supp Decl., Ex. 8. Again, the Company's shares fell on this news, closing down 2.54% on May 14, 2021.

---

[3] Again, since this is a Securities Act case and not an Exchange Act case, plaintiff was not required to plead all disclosures in the complaint. Both Plaintiffs and Defendants are free to address the merits of any future affirmative defense by analyzing relevant price movements and news during the relevant time period.

[4] Yahoo Finance provides the Company's historical stock price data to the public at https://finance.yahoo.com/quote/COIN/history?p=COIN.

8

1  Furthermore, Flynn's and Wright's arguments fail because negative casuation is not a
2  "unique defense," as it affects the entire class, not just McMichael & Casola. As Judge Gilliam
3  noted in *Lyft*, "There likely are many class members who sold shares prior to any partial disclosure
4  or in between partial disclosures who are similarly susceptible to a negative loss causation
5  defense." *Id.,* at *6. In sum, since Section 11 can be said to create a factual presumption that "any
6  decline in value is [ ] caused by the misrepresentation in the registration statement," McMichael
7  & Casola's statutory loss should be presumed for lead plaintiff purposes and no unique defense
8  has been proven. *Levine*, 508 F. Supp. 2d at 272 (citing *McMahan & Co. v. Wherehouse Entm't,*
9  *Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995)); *Lyft* at *4.[5]

10  *Soe v. Progenity, Inc.*, No. 20-cv-01683, 2020 WL 7129365 (S.D. Cal. Dec. 3, 2020), cited
11  by Flynn, is unpersuasive and distinguishable. There is no reason for this Court to disregard the
12  *Lyft* decision decided in this District, which is directly on point. Further, unlike here, the movant
13  in *Soe* was apparently unable to point to any relevant drops that occurred while the movant held
14  his shares that could potentially substantiate his damages. *Soe* at *5. By contrast, in this case,
15  there are multiple relevant drops pre-dating McMichael & Casola's sales that are relevant to
16  negative causation. *See supra* at 8.

17  Even in the context of the Exchange Act cases where loss causation is an element, a movant
18  need not hold through every stock drop in order to be typical. *See Juliar v. Sunopta Inc.*, No. 08
19  CIV. 1070, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("where a putative lead plaintiff
20  sold all its shares after a partial disclosure of misconduct but before the final disclosure, that
21  putative lead plaintiff does not face unique defense of having to show loss causation to the extent
22  that it cannot serve as lead plaintiff"); *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485,
23  502 (D. Conn. 2017) ("So long as a partial disclosure can be plausibly alleged, a proposed lead
24  plaintiff should not be precluded from relying on that disclosure to establish recoverable losses");
25  *Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009) ("selling shares

---

[5] To the extent Wright argues that other movants have "unique standing defenses" based on the purchase date of their Coinbase securities, that issue is not present for McMichael & Casola who both purchased on April 14, 2021, the date of the Offering. *See* ECF No. 60 at 7.

9

during the class period does not disqualify a class member from being appointed lead plaintiff"); *see also Mulligan v. Impax Lab'ys, Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *6 (N.D. Cal. July 2, 2013) (loss "calculations based on retained shares are not appropriate in cases where multiple partial corrective disclosures are alleged over time"). "[A] named plaintiffs representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Malriat v. QuantumScape Corp.*, No. 3:21-CV-00058-WHO, 2021 WL 1550454, at *4 (N.D. Cal. Apr. 20, 2021) (citing *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969-70 (9th Cir. 2019))

### E.     McMichael & Casola Are a Proper Group

McMichael & Casola are also not disqualified simply because they chose to move as a group, which is a practice commonly permitted by courts in this District and others. *See, e.g.*, *In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). They have demonstrated that they are "cohesive" and able to work together for the good of the class. *See* ECF No. 46-5. Moreover, they do not need to aggregate their losses in order to have the largest financial interest – McMichael alone can claim this title with losses of over $539,000.[6] ECF No. 46-6. This Court has specifically found similar groups preliminarily adequate for lead plaintiff purposes. Vaxart Tr. at 11:4-25 ("[Grouping of unrelated class members] is something that some courts allow all the time, other courts have a problem with, and in this case, one of the two people has [ ] the largest loss . . . . Their motion is granted.").

### CONCLUSION

For the foregoing reasons as well as those set forth in their other moving papers, McMichael & Casola respectfully request that the Court appoint them co-lead plaintiffs, appoint Scott+Scott as lead counsel, and deny all competing motions.

---

[6] Should the Court wish to only appoint a single individual as lead, McMichael & Casola hereby consent to appointment of McMichael only as Lead Plaintiff, as the movant with the largest individual loss who is also adequate and typical.

10

JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY

Dated: October 12, 2021                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV (admitted *pro hac vice*)
Rhiana L. Swartz (*pro hac vice* forthcoming)
Jonathan M. Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
Facsimile:  212-233-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

*Counsel for Movants McMichael and Casola and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian J. Schall (CA 290685)
1880 Century Park E, Suite 404
Los Angeles, CA 90067-1604
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Additional Counsel for Vincenzo Casola*

11

JUSTIN MCMICHAEL AND VINCENZO CASOLA'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2021, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on October 12, 2021, at New York, New York.

                                        *s/ Thomas L. Laughlin, IV*
                                        Thomas L. Laughlin, IV
                                        (admitted *pro hac vice*)