Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY, LLP**
1160 Battery Street East, Suite 100
San Francisco, California 94111
Telephone: (415) 373-1671

*Counsel for Lead Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC. SECURITIES LITIGATION | Master File No. 3:21-cv-05634-TLT<br><br>**NOTICE OF MOTION AND MOTION FOR EQUITABLE TOLLING OF STATUTE OF LIMITATIONS** |

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that Lead Plaintiff Hsiu-Mei Yu ("Plaintiff"), by and through her undersigned counsel, will and hereby does respectfully move this Court for an Order equitably tolling the statute of limitations applicable to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and the U.S. Securities Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder, for all members of the proposed Class in the above-captioned Action until sixty (60) days after the Court lifts the stay pending the U.S. Supreme Court's decision in *Slack Technologies, LLC v. Pirani*, No. 22-200 (S. Ct.) ("*Slack*").

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities in Support Thereof, the Declaration of Adam M. Apton ("Apton Decl.") filed herewith, and all exhibits attached thereto, and such other written and oral arguments as may be permitted or requested by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff sued under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). Importantly, Plaintiff's claims were, and presently remain, anchored in the Ninth Circuit's decision in *Slack* which holds, in pertinent part, that shareholders who buy stock in a "direct listing" (as opposed to an "initial public offering") have standing to sue under the Securities Act. *See Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 947-48 (9th Cir. 2021). That decision, however, is on appeal before the Supreme Court and scheduled for argument on April 17, 2023. If the Supreme Court affirms *Slack*, this case can and should resume litigation immediately. On the other hand, if the Supreme Court reverses *Slack* and in particular, holds that shareholders do not have standing to sue under the Securities Act when their claims arise from a "direct listing," then Plaintiff will need to amend her Complaint to assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

Plaintiff's anticipated Exchange Act claims have a two-year statute of limitations. 28 U.S.C. §1658(b). Given the current allegations in Consolidated Class Action Complaint (the "Complaint"), if Plaintiff were to assert these Exchange Act claims in response to a reversal in *Slack*, she would need to do so before May 13, 2023, *i.e.*, two years after Plaintiff discovered the "facts constituting the violation" concerning Defendants' statements about Coinbase's "platform" and "flywheel" growth strategy. Plaintiff thus brings the present motion to ensure that she will be able to assert these Exchange Act claims, if necessary, without jeopardizing them as being untimely.

Extraordinary circumstances outside the control of Plaintiff, including the existing stay of proceedings pending the Supreme Court's decision in *Slack*, necessitate tolling of applicable statute of limitations. Plaintiff and the Class would be unduly prejudiced by allowing the expiration of potential Exchange Act claims because of delayed proceedings, or in the alternative, forcing Plaintiff to expend significant resources filing a new complaint to preserve these claims. Indeed, a follow up complaint would be a waste of judicial resources and would prompt administrative action, marking the cases as related and/or consolidating the related actions, which could prove to be premature, unnecessary, and wasteful depending on the outcome in *Slack*. Moreover, tolling the applicable statute of limitations will not prejudice Defendants in any way. Defendants were aware of the potential scope of liability when the Complaint was filed and cannot deny being on notice of Plaintiff's potential Exchange Act claims as of the filing on this present motion—*before* the expiration of any applicable statute of limitations. As such, tolling protects Plaintiff's and the Class's rights without wasting time, effort, or resources of the Parties or the Court, and without causing prejudice to Defendants. Accordingly, in the interest of justice and judicial economy, equitable tolling is proper.

## II.     FACTUAL BACKGROUND

On December 20, 2021, Plaintiff filed the Complaint alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act, on behalf of herself and all other persons or entities who purchased or otherwise acquired Coinbase's common stock, on or after April 14, 2021, pursuant

and/or traceable to the registration statement and prospectuses, filed by the company with the SEC. ECF No. 90 at ¶1.

The Complaint alleges that on April 14, 2021, Coinbase became the first crypto company to go public by way of a direct listing (as opposed to an ordinary initial public offering). *Id*. at ¶¶2, 20. The company's direct listing offered investors an opportunity to invest in "crypto" but with the stability and security of an established large-cap company thanks to Coinbase's proprietary and trusted "platform," "significant scale," and, most importantly, proven "flywheel" growth strategy. *Id.* at ¶¶3, 62-68. However, unbeknownst to investors, these fundamental components of Coinbase's business, while once cornerstones of its operations, were materially misrepresented in the company's registration statement and prospectuses filed with the SEC. *Id.* at ¶¶91-104. In the months leading up to the direct listing, Defendants generated a massive influx of new users to Coinbase's "platform" through a heavy advertising and promotional campaign. *Id*. at ¶¶4, 69-82. These new users created an unprecedented spike in volume and trading activity, causing a breakdown in its operations, "platform" disruptions, and a rupture in the "flywheel" cycle that had been responsible for the company's historical growth. *Id.* at ¶¶5, 83-88. Consequently, Defendants' efforts to increase Coinbase's numbers in advance of the direct listing allowed them to present a more attractive proposition for investors but left the company and its newfound investors damaged and vulnerable to competition. *Id.* at ¶¶6, 89-90.

Due to Defendants' promotional campaign and the damaged state of Coinbase's "platform" and "flywheel" growth strategy, Plaintiff and other public investors who purchased Coinbase shares in the direct listing, unknowingly made an investment that was materially different and substantially riskier than what had been represented in the registration statement and prospectuses. *Id*. at ¶¶7, 105. On May 13, 2021, investors discovered the full scope of Defendants' promotional campaign and the detrimental impact it had on the company when Coinbase reported its financial earnings for the first quarter of the fiscal year 2021. *Id.* at ¶106. In response to this revelation, the price of Coinbase's stock plummeted, causing significant damage to investors that had purchased or acquired Coinbase common stock in the direct listing. *Id.*

## III. PROCEDURAL HISTORY

On July 22, 2021, plaintiff Donald Ramsey filed this securities class action, on behalf of all persons and entities that purchased or otherwise acquired Coinbase Class A common stock pursuant and/or traceable to the company's registration statement and prospectus for the resale of up to 114,850,769 shares of its Class A common stock, whereby Coinbase began trading as a public company on or around April 14, 2021; alleging Defendants violated Sections 11, 12(a)(2) and 15 of the Securities Act. ECF No. 1.

On November 11, 2021, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B), Plaintiff Hsiu-Mei Yu was appointed to serve as Lead Plaintiff and her selection of counsel approved as Lead Counsel for the Class. ECF No. 87.

Plaintiff filed the operative Complaint on December 20, 2021. ECF No. 90. Defendants moved to dismiss the Complaint on February 8, 2022. ECF No. 105. Plaintiff opposed Defendants' motion on March 15, 2022 (ECF No. 108) and Defendants replied in further support of their motion on April 12, 2022 (ECF No. 110). On May 12, 2022, Plaintiff filed a sur-reply with leave of the Court. ECF No. 113. As such, Defendants' motion was fully briefed as of May 12, 2022. On July 12, 2022, Honorable Edward J. Davila issued notice that the pending motion to dismiss previously noticed for oral argument on July 14, 2022, would be taken under submission without oral argument pursuant to Civ. L.R. 7-1(b). ECF No. 114.

Before J. Davila had the opportunity to issue an order resolving Defendants' pending motion to dismiss, the Action was reassigned to this Court on August 29, 2022. ECF No. 115. Following the reassignment of this Action, the Court issued an order on November 3, 2022, setting a case schedule and re-scheduling oral arguments on Defendants' motion to be heard on February 14, 2023. ECF Nos. 121, 122.

On December 13, 2022, the Supreme Court granted certiorari in *Slack*. The specific question presented to the Supreme Court in *Slack* is "[w]hether Sections 11 and 12(a)(2) of the Securities Act of 1933 require plaintiffs to plead and prove that they bought shares registered under the registration statement they claim is misleading." Defendants asserted the same standing argument in their fully

4

briefed motion to dismiss, arguing that Plaintiff's Complaint should be dismissed for lack of standing if either an *en banc* Ninth Circuit or the Supreme Court reversed the Ninth Circuit panel's decision in *Slack*. *See* ECF No. 105 at 1, 21. As such, on January 19, 2023, roughly one month before the motion to dismiss hearing, the parties agreed to, and the Court approved, a stay of proceedings in this Action, vacating all deadlines, pending the Supreme Court's decision in *Slack*. ECF Nos. 123-24.

## IV. ARGUMENT

### A. Equitable Tolling Can and Should Be Granted to Avoid Prejudice.

"[E]quitable tolling concerns itself with the equities of dismissal for untimely filing caused by factors independent of the plaintiff. Accordingly, [the court] must ask whether it would be unfair or unjust to allow the statute of limitations to act as a bar to [a plaintiff's] claim." *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 1004 (9th Cir.2006); *see also O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (applying the doctrine when "defendants created the situation which impeded" the plaintiff's filing of her claim). "The equitable tolling doctrine is read into every federal statute of limitations, and the decision whether the doctrine should be applied lies within the sole discretion of the court." *U.S. v. $57,960.00 in U.S. Currency,* 58 F. Supp. 2d 660, 664 (D.S.C. 1999) (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946)).

Courts have equitably tolled applicable statute of limitations in other class action lawsuits when doing so is in the interest of justice. *See, e.g., Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,* 645 F.2d 757, 760–61 (9th Cir. 1981) (equitable tolling proper where plaintiffs were without fault and "practical effect of not tolling the statute would be to bar forever any claim" the class members had against defendant), *abrogated on other grounds by Hoffman–LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Beauperthuy v. 24 Hour Fitness USA, Inc.,* 2007 WL 707475 at *8 (N.D. Cal. Mar.6, 2007) (equitably tolling statute of limitations because of factors outside plaintiffs' control, including litigation, arbitration and settlement of related action); *Hughes v. S.A.W. Ent., LTD*, 2017 WL 6450485, at *10 (N.D. Cal. Dec. 18, 2017) (same); *Roe v. SFBSC Mgmt., LLC*, 2015 WL 1798926, at *5 (N.D. Cal. Apr. 17, 2015) ("To ensure that no potential

plaintiff is harmed by this stay, the court rules that the statute of limitation is tolled for the putative class during the pendency of the [defendant's] appeal" and "until the date on which the Ninth Circuit issues its mandate.").

Courts have also found that pending or delayed court decisions can serve as justification for application of the equitable tolling doctrine. *See e.g.*, *Adams v. Tyson Foods, Inc.,* No. 2007 WL 1539325, at *2 (W.D. Ark. May 25, 2007) (tolling the statute of limitations during stay entered pending a decision by another court whether to transfer case into MDL); *Ornelas v. Hooper Holmes, Inc.,* 2014 WL 7051868, at *4-*5 (D.N.J. Dec. 12, 2014) (holding that equitable tolling was appropriate due to the delay in resolving Plaintiffs' motion for conditional certification); *Bergman v. Kindred Healthcare, Inc.,* 949 F. Supp. 2d 852, 860-61 (N.D. Ill. 2013) ("The long delay in issuing a ruling is an extraordinary circumstance that should not cause the opt-ins to lose out on the potential benefits of the collective action"); *McGlone v. Contract Callers, Inc.,* 867 F. Supp. 2d 438, 445 ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings"); *Ruffin v. Ent. of the E. Panhandle,* 2012 WL 28192, at *2-*3 (N.D.W. Va. Jan. 5, 2012); *Helton v. Factor 5, Inc.,* 2011 WL 5925078, at *2-*3 (N.D. Cal. Nov. 28, 2011) (equitably tolling statute of limitations due to procedural delay, including court delay in ruling on motion); *Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963, at *3 (E.D.N.Y. Mar. 8, 2011); *Stickle v. SCIWestern Mkt. Support Ctr., L.P.,* 2008 WL 4446539, at *21-*23 (D. Ariz. Sept. 30, 2008) (equitably tolling statute of limitations where court was delayed from making collective action ruling); *Beauperthuy*, 2007 WL 707475, at *8-*9 (equitably tolling statute of limitations due to litigation delay).

**B.     A Limited Period of Equitable Tolling Is Appropriate to Conserve Resources and Avoid Prejudice Prior to the Supreme Court's Decision in *Slack*.**

Securities fraud claims brought under Sections 10(b) and 20(a) of the Exchange Act must be brought "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). The statute of limitations period begins running when the plaintiff "discovers or a reasonably

6

Motion for Equitable Tolling                                              Master Case No. 3:21-cv-05634-TLT

diligent plaintiff would have discovered the facts constituting the violation, including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). Under Plaintiff's current allegations, the statute of limitations for Plaintiff's potential Exchange Act claims will arguably expire on May 13, 2023, *i.e.*, two years after Coinbase reported its financial earnings and other operational news to investors on May 13, 2021. *See* Complaint at ¶106.

Plaintiff has diligently and expeditiously pursued her rights, and the rights of Class, in this matter. However, the Action remains plagued by delay caused entirely by circumstances beyond Plaintiff's control. While the Supreme Court's decision in *Slack* will not resolve every issue in this case, the Parties do not disagree that "it may end up significantly simplifying the proceedings" and "converse resources for both the Court and the [P]arties." *McAdory v. TTM Technologies, Inc.*, 2017 WL 8186697, at *3 (C.D. Cal. June 26, 2017). Given these considerations, Plaintiff agreed to stay the Action (ECF No. 123) but concerns regarding the application of statute of limitations under the Exchange Act and SEC Rule 10b-5 remain. Despite Plaintiff's repeated attempts to reach an agreement with Defendants to toll applicable statute of limitations, Defendants have refused. *See* Apton Decl. at ¶15.

This court's decision in *Coppernoll v. Hamcor, Inc.,* 2017 WL 1508853 (N.D. Cal. Apr. 27, 2017) is instructive. In *Coppernoli*, the court found that its prior decision to grant a stay of the putative employment class action pending the Supreme Court's decision in *Morris* constituted an "extraordinary circumstance beyond putative plaintiffs' control prevent[ing] them from making a timely claim" and justified the equitable tolling of applicable statute of limitations until the stay was lifted. *Id.* at *2–*4; *See e.g.*, *McAdory*, 2017 WL 8186697, at *3 (granting stay of the case pending the Supreme Court's decision in *Morris* "conditioned upon the tolling of [applicable] statute of limitations.").

Likewise, courts have found the implausibility of obtaining relief through a separate, but similar lawsuit, constituted as extraordinary circumstances justifying equitable tolling. *See Coppernoli*, 2017 WL 1508853, at *2 ("Even when physical access to a functioning court is

possible, equitable tolling may nevertheless be proper if there is no real possibility of gaining relief in court.") (quoting *Seattle Audubon Society v. Robertson*, 931 F.2d 590, 596 (9th Cir. 2001)). To preserve the Class's rights and prevent the expiration of potential claims, Plaintiff could file a separate follow-up action alleging violations of Sections 10(b) and 20(a) of the Exchange Act based on substantially similar allegations of misconduct, likely against the same defendants, during the same relevant time period. Consolidation with this stayed Action, however, would then be appropriate to avoid unnecessary cost, delay, and overlap in adjudication. *See* Fed. R. Civ. P. 42(a); *see also Russo v. Finisar Corp.*, 2011 WL 5117560, at *3 (N.D. Cal. Oct. 27, 2011) (noting that "actions [that] present virtually identical factual and legal issues…should be consolidated."). Indeed, there is concrete risk that, absent tolling, the Parties would expend time and resources preparing and filing a separate complaint, briefing a consolidation motion, and any response to the complaint filed by Defendants. Likewise, the Court would expend judicial resources addressing these administrative proceedings, which could be premature, unnecessary, and wasteful depending on the Supreme Court's decisions in *Slack*. As such, "[i]t is also impractical to encourage the filing of [separate] claims destined to be drawn through the same motion practice as [this Action], only to be stayed, as well, while we wait for a decision on [*Slack*]." *Coppernoli*, 2017 WL 1508853, at *4; *see, e.g.*, *Lucas v. JJ's of Macomb, Inc.,* 321 F. Supp. 3d 882, 888 (C.D. Ill. 2018) ("While it is possible that a putative plaintiff may know of his claim and join the suit or bring one of his own … that possibility does not mean that putative plaintiffs' rights are not affected by delay.").

Finally, Defendants will not be prejudiced by the tolling of Plaintiff's potential claims. "As part of the determination of the possible prejudice to the defendant, the court should ask whether the defendant was aware of the potential scope of liability when the complaint was filed." *Kellgren v. Petco Animal Supplies, Inc.,* 2014 WL 2558688, at *4 (S.D. Cal. June 6, 2014) (equitably tolling statute of limitations where delay caused by the defendants' motion to dismiss would unfairly prejudice potential class members). Defendants had "full knowledge that the named Plaintiff brought the suit as a collective action on the date of the filing and was fully aware of its scope of potential liability" and therefore are not "in any way prejudiced by the tolling of the [Exchange Act

and SEC Rule 10b-5] statute of limitations for [Plaintiff and] potential [Class members]." *Struck v. PNC Bank*, 931 F. Supp. 2d 842, 848 (S.D. Ohio 2013). Moreover, Defendant will not be prejudiced because "equitable tolling will not increase the number of persons who [have] claims against the Defendants. It will simply prevent preclusion of claims based upon the delay… ." *Bolletino v. Cellular Sales of Knoxville, Inc.,* 2012 WL 3263941, at *4 (E.D. Tenn. Aug. 9, 2012). Moreover, Plaintiff's present request for tolling comes *before* the expiration of any applicable statute of limitations, was expressly contemplated by the Parties when agreeing to file a joint stipulation to stay proceedings and is the direct result of Defendants' refusal to sign a tolling agreement. *See* Apton Decl. at ¶¶10-11 & Ex. C (Supplemental Letter). As such, Defendants cannot in good faith deny knowing the potential scope of liability to claim prejudice. Thus, equitable tolling will ensure protection of Plaintiff's and Class member's significant interest in preserving their claims and will impose no surprise or undue prejudice on Defendants. Tolling is therefore the fairest outcome for both parties.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectively requests that the Court equitably toll applicable statute of limitations under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 until sixty (60) days after the Court lifts the stay following the Supreme Court's issuance of a decision in *Slack*.[1]

DATED:  April 6, 2023            Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: *s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, California 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com

---

[1] Plaintiff reserves all rights to assert her Exchange Act claims as timely pursuant to Rule 15 of the Federal Rules of Civil Procedure and the doctrine of relation back. Rule 15(c) provides that an "amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

*Counsel for Lead Plaintiff and the Class*